Billy Glen **ISLEY**, Petitioner–Appellant,

v.

Richard L. **DUGGER**,
Respondent–Appellee.

No. 88–3553.

United States Court of Appeals,
Eleventh Circuit.

July 12, 1989.

John L. Atti, Jeffrey E. Cosnow, Palm Harbor, Fla., for petitioner-appellant.

Katherine V. Blanco, Tampa, Fla., for respondent-appellee.

Before POWELL *, Associate Justice (Retired), United States Supreme Court, RONEY, Chief Judge, and HILL, Circuit Judge.

RONEY, Chief Judge:

The appeal in this habeas corpus case raises the issue of whether statements made by criminal defendant Billy Glen Isley to two court-appointed psychiatrists were used by them in their determination of his sanity. *Isley v. Wainwright,* 792 F.2d 1516 (11th Cir.1986) (remanding to district court for evidentiary hearing). The district court decided the statements were necessary and usable so there was no con-

stitutional error in allowing the psychiatrists to relate those statements to the jury during Isley's Florida state trial. We affirm.

Isley was tried twice in state court on a charge of first-degree murder in connection with the stabbing death in 1975 of Kenneth Houston, a man Isley had picked up hitchhiking. His first conviction was overturned by the Florida First District Court of Appeal because the trial judge denied the jury's request for a copy of the instructions without notice to the defendant, and because it refused to instruct the jury on the consequences of a verdict of not guilty by reason of insanity. *Isley v. State,* 354 So.2d 457 (Fla. 1st DCA 1978).

Isley contended at his second trial, as he had done at his first trial, that he was insane at the time of the crime. He presented testimony to that effect from a psychiatrist, a psychologist, another doctor and seven lay witnesses. He objects here to the rebuttal testimony of two psychiatrists presented by the prosecution who recounted Isley's factual narration to them of his involvement in the murder. This testimony came as they were giving their opinion that Isley was sane at the time of the offense.

Dr. Ernest Bourkard was allowed to quote Isley as stating:

David [Nyberg, a co-defendant] pushed Ken in the bathtub and told him to die. I put my hand over Ken's mouth to stop his noises, as the police might hear us. And David handed me a machete. Ken was holding both my hands, so I could not get the machete up to his neck. And somehow, I got stabbed in the right thigh.... I would not tell them anything in the emergency room, because I was afraid of the police.

Bourkard, after expressing his opinion that Isley was sane, also testified that the defendant

... demurred against the killing by stabbing or cutting the man's throat, but he himself, wanted to kill the man by inject-

---

* Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, Retired,

sitting by designation.

ing some intravenous substance that would kill him. He held his hand over the dying man's mouth, who was apparently screaming, because he felt the police would hear him.

Dr. Arturo Gonzalez, after giving his opinion that the defendant was able to distinguish between right and wrong at the time of the offense, also stated that the defendant told him he had covered the victim's mouth to stifle his screams.

Isley's conviction of first-degree murder was affirmed on direct appeal. Isley brought a habeas corpus petition in federal court contending the use of his statements violated his Fifth Amendment privilege against self-incrimination and that his public defender counsel had not adequately represented him, in violation of the Sixth Amendment. We remanded the case for an evidentiary hearing on the Fifth Amendment issue. *Isley v. Wainwright*, 792 F.2d 1516 (11th Cir.1986).

After the hearing, the Magistrate made the following specific finding:

I find that the statements made by Isley to the psychiatrists were necessary and usable by them in their determination of his sanity or insanity and in arriving at their expert opinions of Isley's sanity.

The district court adopted the Magistrate's report and recommendation. The finding that the statements were necessary and usable is not clearly erroneous. Fed.R. Civ.P. 52(a). Dr. Gonzalez testified that he based his opinion of Isley's sanity on several of these facts recounted to him by Isley. Dr. Bourkard had testified at trial that the basis for his opinion was Isley's statement to him about his actions during and after the murder.

■ The question is whether the psychiatrists should have been allowed to quote Isley's statements directly to the jury. Dr. Gonzalez testified at the evidentiary hearing that he, and probably Dr. Bourkard, could have given their opinion that Isley was sane without quoting Isley's statement and without giving an explanation to the jury about why they believed as they did. Since the statements clearly were used in forming their opinion, however, there was

no constitutional error in allowing them to recite statements made by the defendant to explain the basis for their opinion.

The defendant does not plead insanity without some risk. When a defendant has raised an insanity defense, the State may compel him to undergo a psychiatric examination without running afoul of the Fifth Amendment. *United States v. Cohen*, 530 F.2d 43 (5th Cir.), *cert. denied*, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976). Further, "if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 2918, 97 L.Ed.2d 336 (1987).

In *Parkin v. State*, 238 So.2d 817 (Fla. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971), on which the defendant relied at trial, the Florida Supreme Court held that a defendant raising an insanity defense could be compelled to give testimonial responses to court-appointed psychiatrists. Although the court stated that during the trial the court and the state should not inquire into the information about the offense provided by the defendant, the court repeatedly stressed that "if the defendant's counsel opens the inquiry to collateral issues, admissions or guilt, the State's redirect examination properly could inquire within the scope opened by the defense." *Id.* at 820. *See also Booker v. State*, 397 So.2d 910, 913 (Fla.), *cert. denied*, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981).

In this case the inquiry complied with the admonition of this Florida case, which seems to make its propriety depend upon the defendant's having opened the issue. The defendant's own psychiatric witness, Dr. William Chambers, testified that Isley knew it was wrong to murder, that Isley admitted holding a machete to the throat of the victim and that he held his hands over the victim's mouth so the neighbors would not hear and call the police. Isley presented ten witnesses to testify as to his

bizarre behavior, and some of them recounted Isley's description of the offense, which essentially corroborated the testimony of an eyewitness to the murder in the State's case-in-chief. Although there were some discrepancies, such as Dr. Bourkard's testimony that Isley denied that he had been under the influence of drugs, contrary to his assertion at trial that he was under the influence of both drugs and alcohol, the State cannot be faulted for properly probing on rebuttal into areas opened by the defense.

As to federal constitutional law, the cases have consistently held that a psychiatric expert can relate statements of the defendant which are used to determine sanity. In *United States v. Byers*, 740 F.2d 1104 (D.C.Cir.1984) (en banc), the court held that the Fifth Amendment was not violated by a Government psychiatrist's testimony detailing unrecorded statements made by the defendant during a court-ordered examination. The court concluded that to hold otherwise would have an "unreasonable and debilitating effect" on "society's conduct of a fair inquiry into the defendant's culpability." *Id.* at 1113. Similarly, in *Noggle v. Marshall*, 706 F.2d 1408, 1416 (6th Cir.), *cert. denied*, 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983), the court held the State was entitled to test the validity of the defense experts' opinions as to sanity by cross-examining them about inculpatory statements made to them by defendant. This was permitted even though they had only testified on direct that, assuming the defendant had committed the offense, he was insane. In *Watters v. Hubbard*, 725 F.2d 381 (6th Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984), the prosecution was permitted to cross-examine defense psychiatrists about the defendant's admissions of guilt where they testified that their opinions as to sanity were based in large part on these admissions. *See also Booker v. Wainwright*, 703 F.2d 1251 (11th Cir.) (State's use of information from psychiatric exam to impeach defendant's testimony during penalty phase did not violate Fifth Amendment), *cert. denied*, 464 U.S. 922, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983);

*Williams v. Lynaugh*, 809 F.2d 1063 (5th Cir.) (defendant waived Fifth Amendment objection to State's evidence offered in rebuttal on issue of future dangerousness by raising issue through testimony of own psychiatrist and by cross-examination of State's psychologist), *cert. denied*, 481 U.S. 1008, 107 S.Ct. 1635, 95 L.Ed.2d 207 (1987).

Although we affirm the district court's decision that there is no violation of the Fifth Amendment in these circumstances, it appears that the district court was also correct in holding that, even if there was constitutional error, it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The doctors' disclosures were essentially cumulative of evidence already presented to the jury during both the State's case-in-chief and the defense case.

AFFIRMED.