571 So.2d 1251 (1990)
Ex parte Shep WILSON, Jr.
(Re Shep Wilson, Jr. v. State).
89-561.
Supreme Court of Alabama.
August 17, 1990.
Rehearing Denied November 2, 1990.
*1253 Carlos A. Williams and J.L. Chestnut, Jr. of Chestnut, Sanders, Sanders, Williams & Pettaway, Selma, for petitioner.
Don Siegelman, Atty. Gen., and William D. Little, Asst. Atty. Gen., for State.
HORNSBY, Chief Justice.
This is a death penalty case. Shep Wilson, Jr., is a 33-year old black man with a history of emotional disturbance and violence toward women, including one prior conviction of rape. Although Wilson was one of several suspects in the kidnapping, rape, and murder of Monica Cook, he was not initially arrested in that regard. On February 14, 1986, Wilson was arrested for unlawful possession of a handgun; information obtained after that arrest eventually led to his conviction for the murder of Monica Cook.
The evidence showed that on the morning of January 27, 1986, Monica Cook was abducted from the Shell Discount Food Mart at which she worked in Sylacauga, Alabama. Cook had reported to work at 11:00 p.m. the evening before and was seen at the store by two persons, Officer Dusty Zook and Booker Harris, whose testimony placed her in the store at 12:30 a.m. and at a point between 1:30 and 2:00 a.m., respectively. Harris stated that as he was leaving the store between 1:30 and 2:00 a.m., he noticed a blue Buick automobile in the parking lot. Harris stated that he watched this automobile for some time but that no one got out of it. Just after 2:00 a.m., Jim Green entered the store and found no one there. Green testified that he called the police from a pay telephone that was close by.
Inside the store, the police found evidence that indicated that Cook had been forcibly abducted. A package of Kool cigarettes, which showed traces of blood, was found on the floor. Traces of blood were also found on the front door of the store building. The police found a woman's watch that appeared to be twisted as if had been forcibly wrenched from someone's arm.
Monica Cook's body was found on January 30, 1986, in the vicinity of Riser's Mountain near Riser's Mill Road. In one ear, police found an earring. Cook's clothing was in disarray. Evidence indicated that she had suffered numerous blunt force injuries and that as a result of one such blow her skull was fractured. Physical evidence indicated that Cook had been both raped and sodomized.
Upon his arrest for unlawful possession of a handgun, Wilson waived his Miranda rights and denied possession of the pistol. However, when police questioning shifted to the investigation of Monica Cook's murder, Wilson asked for an attorney and all questioning then ceased. The trial court found that the police did not arrest Wilson as a pretext to question him about Monica Cook, and the court further found that *1254 Wilson had made no incriminating statements at any time before the appointment of his attorney.
On the day after the handgun arrest, George Sims was appointed as Wilson's attorney, and Sims was contacted by the district attorney, who was seeking permission to search Wilson's home in connection with the Monica Cook investigation. Sims consulted with Wilson about the search and advised Wilson not to consent if he was involved with the Cook case. Wilson denied any involvement and subsequently signed a written consent to the search of his house and car, and both Wilson and Sims were present during the house search. Wilson's car was found on the property of his mother and was searched there.
Significant circumstantial evidence implicating Wilson in Monica Cook's death was discovered during these searches. This evidence included: (1) a simulated pearl earring substantially similar to the one found on Monica Cook's body, found in the carpet in Wilson's house; (2) fibers taken from carpet in Wilson's home that were later found to be identical to fibers found on Monica Cook's body; (3) bloodstains on a quilt on Wilson's bed; and (4) fibers taken from the automobile that were later found to be identical to fibers found on Monica Cook's body.
After the search was completed, Wilson approached investigator Alvin Kidd, a police officer he was acquainted with, and asked to talk with him later. Apparently Wilson wished to find out what the search and investigation had revealed. That evening the district attorney contacted Sims and informed him that Wilson had expressed a desire to discuss the Cook case with investigator Kidd. Sims responded by saying that he had no objections to Wilson's talking with Kidd and that Sims would come to the place of the questioning if Wilson requested his presence.
After the conversation between Sims and the district attorney, Kidd approached Wilson and Wilson told him that he still wanted to discuss the Cook investigation. Wilson was again advised of his rights and was informed of Sims's willingness to be present, and Wilson indicated that he wished to discuss the case without Sims's presence. During the interview, investigator Kidd discussed with Wilson some of the evidence that had been found in the search that linked Wilson to Cook's murder. Wilson eventually stated that he had unintentionally strangled Cook after they had had sexual relations. Wilson stated that he was angry at Monica Cook because she did not have the money she allegedly received from selling his marijuana and he admitted that he struck her with his fists. He further admitted that he had left the body in his residence for several days, and had slept in the same bed with the body on at least one occasion before dumping it in the area where it was later discovered.
The trial court found that Wilson's statement had been made voluntarily and without coercion. The trial court further found that even though the statements given by Wilson were given at approximately 3:00 a.m. on the morning of February 16, 1990, he was not exhausted at the time the statements were given and was aware that he could stop the interview at any time.
At trial, the state presented evidence obtained as a result of the searches of Wilson's residence and vehicle. The incriminating statement was also allowed into evidence. Wilson did not testify. The jury convicted Wilson of three counts of capital murder, and the trial moved to the penalty phase. The defense presented testimony indicating prior mental illness and possible mental retardation, and the state presented evidence that tended to rebut the defendant's evidence as to any mental illness or defect. The jury's determination in the penalty phase was a recommendation of death by a vote of 11 to 1. The trial court subsequently sentenced Wilson to death.
Wilson makes numerous allegations of error at his trial, and several of these issues merit discussion. Specifically, he challenges the validity of the consent searches of his home and automobile, and he also contests the voluntariness of statements that he made to police officers. In connection with the statements given to police and the consent searches mentioned *1255 above, the defendant further claims that he suffered ineffective assistance of counsel. The defendant also challenges the State's use of various mental evaluations prepared pursuant to the trial court's order as a prerequisite to his receipt of state assistance in obtaining mental health evaluations to aid in his defense. We will address these issues separately.

Validity of Consent Searches
The defendant argues that the search of his residence was invalid because, he says, he merely gave consent to a police search for weapons and did not give consent to the search for evidence in the Monica Cook murder case. However, the record indicates that George Sims was contacted by the district attorney and was advised that the police wished to search the defendant's residence in connection with Cook's murder. When questioned on this issue, Sims testified that he informed the defendant that he was indeed a suspect in the Monica Cook murder case. Sims testified that he specifically told the defendant that he doubted that the district attorney had collected enough evidence against him to acquire a search warrant, and that if the defendant had anything to do with the case, he should refuse to consent to any search. Sims's testimony indicates that the defendant specifically denied that he either knew of or participated in the Cook murder. Sims stated that he told the defendant that a search might be of some benefit to him if he had nothing to do with the crime.
A person may consent to a search without a warrant and thereby waive any protection afforded by the Fourth Amendment to his right of privacy. Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965). Consent to a search must be knowingly, intelligently, and freely given. Id. Based upon the evidence set out above, we conclude that the defendant did satisfy these criteria in his consent to the searches of his home and automobile. Further, the record establishes that the defendant gave the consent with knowledge that he was a suspect in the Monica Cook murder case. The trial court's ruling on this issue is supported by substantial evidence. See Prince v. State, 420 So.2d 856 (Ala.Crim.App. 1982).

Voluntariness of Statements Given to Police
The evidence shows that the defendant approached Officer Alvin Kidd while the search of his residence was in progress. The record further indicates that the defendant asked Officer Kidd to come to the jail at a later time because he wanted to talk to him. The record further indicates that the defendant approached Kidd when Sims was not present, and that it was the defendant's intent that Sims not be included in his conversation with Kidd. Before Officer Kidd began any discussions with the defendant, the district attorney contacted Sims to seek permission to speak with the defendant. The evidence indicates that Sims inquired as to whether the defendant had requested his presence and, when informed that the defendant had indicated that he did not wish Sims to be present, made no objection to the conversation between Kidd and the defendant. Sims did state that he would be present during the conversation if the defendant wished that he be there and that he would be ready to come to the place of the interview at any time the defendant requested his presence. The record indicates that the defendant did not request his attorney, and Sims was not present at the interrogation.
We agree with the Court of Criminal Appeals, 571 So.2d 1237, that the statements were voluntarily given and that they evidenced an effective waiver of the right to counsel. In this case, the facts indicate that the defendant initiated further contact with the police and requested that Officer Kidd speak with him. In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court recognized that an accused may validly waive his right to counsel by voluntarily initiating conversation with the police concerning an investigation. In Edwards, the Court stated that when a defendant asserts his right to counsel under *1256 Miranda, questioning must cease until "counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 484-85, 101 S.Ct. at 1884-85.
In this particular case, the defendant had available counsel. George Sims had been appointed his attorney and had accompanied the defendant during the search of his home. It was only after Sims was appointed that the defendant approached Officer Kidd and asked that he speak with him later. Kidd specifically reminded the defendant that his attorney could be present during their conversation. Moreover, the record shows that the defendant was read his Miranda rights and that he stated that he understood those rights. In fact, the taped conversation preserved in the record shows a painstaking and patient approach by the investigators to ensure that the defendant was aware of each of his rights and that he made a knowing and intelligent waiver. Further, it appears in the record that the defendant was not unfamiliar with the criminal process and the importance of his rights, in light of his previous conviction for rape.
In any case, the "determination of the waiver issue must necessarily depend ... upon the peculiar facts and circumstances surrounding that case, including the background, experience and conduct of the accused." Bartlett v. Allen, 724 F.2d 1524, 1527 (11th Cir.1984). See North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). In this case, based upon the totality of the circumstances, we find that the facts and circumstances show a knowing waiver of the defendant's right to counsel at the time the incriminating statements were made. Oregon v. Bradshaw, 462 U.S. 1039, 1047, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983).

Ineffective Assistance of Counsel Claim
The defendant claims that George Sims, who was initially the defendant's appointed attorney following his arrest, was ineffective in his representation. Specifically, the defendant claims that Sims was ineffective in allowing a consent search of the defendant's home and in allowing the defendant to make a voluntary and inculpatory statement to the police.
As to both issues raised by the defendant, we conclude that Sims was not ineffective in representing the defendant. Although we are cognizant of the analysis of the Court of Criminal Appeals concerning when and if the defendant's right to counsel attached under the Fifth and Sixth Amendments, an analysis of the fine distinctions on this point is made unnecessary by our agreement with the conclusion of the Court of Criminal Appeals that the defendant failed to carry his burden of proving that his counsel was ineffective in his representation of the defendant's interests.
The test for determining whether counsel is effective is set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); it requires that the defendant show that the performance of the attorney was deficient and that the deficiency resulted in prejudice to the defendant. In this context, the term "deficient" has generally been defined as outside the range of reasonable professional conduct. Singleton v. Thigpen, 847 F.2d 668 (11th Cir.1988); cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989). Application of the standard articulated in Strickland and its progeny to the facts of this case does not demonstrate to us that the actions of Sims were deficient.
With respect to the searches, the record indicates that while Sims advised the defendant that a consent could serve the defendant's interest by removing him as a suspect in the Cook investigation only after the defendant assured him that he was in no way involved in the murder. Sims was not ineffective in advising the defendant to act on facts that the defendant represented to Sims were the truth. Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Moreover, Sims specifically told the defendant that he should not consent to the search if he was in any way involved in the Cook case. Plainly, the defendant cannot meritoriously *1257 argue ineffective assistance of his counsel when he disregarded his counsel's advice.
With respect to Sims's actions in relation to the defendant's statement, our preceding discussion with respect to the voluntariness of this statement establishes that the defendant validly waived any right to counsel prior to making any statement. The waiver of the right to counsel would certainly preclude the defendant's raising an argument concerning ineffective assistance of counsel. Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).
The record indicates that at the time Sims was informed that the defendant wished to converse with Officer Kidd, Sims had no knowledge of the evidence that implicated defendant in the Cook murder and was still operating under the defendant's representations that he was in no way involved. We cannot hold that it was outside the range of reasonable professional representation for Sims to rely on the representations of his client as to his innocence and on the instructions of his client that he was not to be present at the interview with Officer Kidd. Nix, supra; see Phelps v. State, 435 So.2d 158 (Ala.Crim.App.1983) (counsel's advice that defendant make a statement to police not ineffective assistance of counsel). Here, Sims simply followed his client's instruction not to come to the interview. Our law would not require Sims, in order to render effective assistance of counsel, to anticipate that the defendant was lying and to disregard the defendant's instructions not to participate in the interview.

State's Use of Psychiatric Evidence
Pursuant to the United States Supreme Court's ruling in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the defendant sought the assistance of a psychiatrist in the preparation of his defense. The State argued that if the defendant presented expert psychiatric testimony, it was entitled to have the defendant examined by its own experts. Following a hearing on the defendant's Ake motion, the trial court ordered that the defendant be transferred to the Taylor Hardin Secure Medical Facility for examination by State experts. The records generated by the Taylor Hardin staff were made available to the defendant's State-paid expert.
During the guilt phase of the trial, the defendant offered no psychiatric evidence. However, at the sentencing phase, the defendant informed the court that he intended to prove that the offense was committed at a time when the defendant was under extreme mental or emotional distress, in an attempt to prove a mitigating circumstance under Code 1975, § 13A-5-51(2). (We note also that from the outset the defendant had pleaded not guilty by reason of insanity.) The defendant produced a number of witnesses at this phase of the trial, including Dr. Edward Benson, a psychiatrist, who was provided to the defendant at the State's expense. Dr. Benson testified that the defendant suffered from paranoid personality disorder, underlying generalized anxiety disorder, and intermittent explosive disorder.
In rebuttal, the State called Dr. Kamal Nagi, a Taylor Hardin psychiatrist who had examined the defendant. Dr. Nagi testified that the defendant was not suffering from any mental disease or defect at the time the crime was committed.
The defendant complains that the trial court erred in requiring that he be examined first by the State in order to receive State funds to pay his expert's expenses, and that his Fifth Amendment rights and his Sixth Amendment right to counsel were violated in this respect. However, it is clear that a trial court may compel the defendant, when he pleads insanity, to undergo psychiatric examination, without infringing on the defendant's constitutional rights. Isley v. Dugger, 877 F.2d 47, 49 (11th Cir.1989). In this regard, one court has stated:
"Several other circuits have rejected this unconstitutionality-per-se argument on various grounds, while one has indicated approval of it. Relying on a balancing test, we choose to follow the former line of cases and permit compelled psychiatric *1258 examinations when a defendant has raised the insanity defense. Since any statement about the offense itself could be suppressed, a rule forbidding compelled examinations would prevent no threatened evil, and the government will seldom have a satisfactory method of meeting defendant's proof on the issue of sanity except by the testimony of a psychiatrist it selectsincluding, perhaps, the testimony of psychiatric experts offered by himwho has had the opportunity to form a reliable opinion by examining the accused. To hold that compelled psychiatric examinations are forbidden because sanity is an element of the offense and that the privilege against self-incrimination prohibits compulsory elicitation of statements going to an element of the offense would be confining ourselves within an analytical prison. Given the defendant's power to have any incriminating factual statements resulting from the examination suppressed, we think the proper analogy is to the required furnishing of handwriting exemplars by the defendant and similar procedures.
"Likewise, we reject appellant's claim of a constitutional right to have an attorney present at the psychiatric examination since that might defeat the purpose of the examination and since the examination is not the kind of critical stage at which the assistance of counsel is needed or even useful. There would be no need for counsel to instruct the accused not to answer questions for fear of factual self-incrimination, for any such matter is subject to suppression; and interference with the examination by counsel on other grounds would be improper."
United States v. Cohen, 530 F.2d 43, 47-48 (5th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976) (footnotes omitted).
Under the analyses of the Isley and Cohen cases, any defendant who raises the insanity issue may be compelled to undergo a psychiatric examination. Thus, the defendant's claim that he was denied equal protection of the laws under the decision in Ake, supra, is not well taken. We agree with the contention of the State that the defendant would have been subject to State examination in any case. Therefore, we hold that there was no error with regard to the defendant's right of equal protection of the laws.
We are mindful that the defendant offered the psychiatric testimony in this case in order to establish mitigating circumstances under Code 1975, § 13A-5-51(2). The defendant clearly bears the burden of proving mitigation under § 13A-5-45(g). However, § 13A-5-45(g) states that once the defendant interjects the issue of mitigation "the State shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence." Thus, the State was justified in producing its own expert to rebut the evidence of mitigation offered by the defendant's expert. Moreover, we note that the defendant and his counsel were advised that the examination at Taylor Hardin would include any mitigating circumstances. In that regard, the defendant claims that the testimony of the state's expert violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. The defendant relies heavily on the case of Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).
We find Estelle distinguishable. In Estelle, the appellate court was required to make a finding of "future dangerousness" in order to impose the death penalty, while in the present case no such requirement exists. The Estelle court held that the examination was improper because the defendant was not informed of his Miranda rights before he was examined by the State's expert and his attorneys were not informed that the scope of the examination would include the issue of "future dangerousness." In this case, the defendant's counsel was informed that the examination would encompass matters of mitigation and the defendant was informed of his Miranda rights prior to the examination. In Estelle, the Supreme Court stated:
"Respondent, however, introduced no psychiatric evidence, nor had he indicated that he might do so. Instead, the State *1259 offered information obtained from the court-ordered competency examination as affirmative evidence to persuade the jury to return a sentence of death. Respondent's future dangerousness was a critical issue at the sentencing hearing, and one on which the State had the burden of proof beyond a reasonable doubt. To meet its burden the State used respondent's own statements, unwittingly made without awareness that he was assisting the State's efforts to obtain the death penalty. In these distinct circumstances, the Court of Appeals correctly concluded that the Fifth Amendment privilege was implicated."
Estelle, supra, at 466, 101 S.Ct. at 1874-75.
In this case, the defendant did enter a plea of not guilty by reason of insanity. Thus, the trial court was justified in compelling the defendant to undergo psychiatric evaluation. In addition, the defendant and his counsel were informed of the State's intention to examine the defendant on matters of mitigation and it appears that, prior to the examination, the defendant was informed of his Fifth Amendment rights. Moreover, the Supreme Court noted that "a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase" as opposed to the case where the defendant intends to offer no such evidence.[1]
Based on the foregoing, we conclude that the defendant's claims regarding the admission of the State's psychiatric evidence are without merit. Because we reverse on the issue addressed below regarding the comment made during the closing argument by the district attorney, we need not consider the remaining issues raised by the defendant.

District Attorney's Comment During Closing on Defendant's Failure to Testify
The following took place during the state's rebuttal in closing arguments in this case:
"DISTRICT ATTORNEY: ... I can't tell you what that woman went through during that night, because there is only one eyewitness, and he ain't going to tell you. I wish I could tell you all of that. I can give you this evidence that these officers have worked meticulously to gather up ...
"DEFENSE COUNSEL: I am sorry; may we approach the bench?
"THE COURT: Yes, sir.
"DEFENSE COUNSEL: I move for a mistrial. He just said that this defendant would not tell. That is the equivalent of saying that this defendant has not testified.
"DISTRICT ATTORNEY: It is reasonable inference from the evidence on the tape, Your Honor.
"DEFENSE COUNSEL: Afterwards on the record I think he ought to be instructed about that, Judge.
"THE COURT: I overrule.
"DISTRICT ATTORNEY [resuming closing argument]: When I say that, I mean this defendant didn't tell you on that tape recording that he gave Alvin Kidd as to what she went through; but all we can do is bring in here these hundred and something exhibits and show you most of it microscopically, because the rest of it has been done away with. And I think you know why it was done away with, because it tells further parts of the story.
"But let me take you back to that night...."
The district attorney continued with the remainder of his closing argument, which consists of over 9 typed transcript pages, and was made over at least the next 25 minutes, as calculated by this Court's reading of the closing argument. After the closing argument was completed, the trial court proceeded with an instruction just *1260 before the formal oral instructions given to the jury. This "curative" instruction is found in the record as follows:
"THE COURT: Ladies and gentlemen of the jury, the defendant has a right to testify or not testify in this case by law. This statute is to the effect that the defendant may elect not to testify; and if he does so elect, his failure to testify in his own behalf shall not create any presumption against him, and gives the defendant a substantive right, which you gentlemen and ladies, under your oath, are bound to respect and uphold. This statute means exactly what it says, and it would be highly improper and unjust for you to disregard this statute in arriving at your verdict. One of the fundamental principles of our democracy is that a person shall not be deprived of his life or liberty except by due process of law, and, for a jury to convict the defendant and disregard this statute, when it would not otherwise convict him, would be contrary to all of our democratic concepts of justice and fair play, in addition to being a violation of the solemn obligation of the jury voluntarily assumed when they entered upon the trial of this case. I instruct you that remark is improper, and you are to disregard it. I further instruct you that statements of counsel are not evidence in the case. I further instruct you that under the law the defendant has the privilege not to testify in his own behalf, or not [sic], that he cannot be compelled to testify against himself, and there is no presumption of guilt, or innocence of any kind [that] can be drawn from failure to testify.
"Satisfied?
"DEFENSE COUNSEL: Yes, sir."
Wilson contends that the district attorney's comments constituted a remark or comment on Wilson's failure to testify on his own behalf; specifically, he points to the following statement:
"I can't tell you what that woman went through during that night, because there is only one eyewitness, and he ain't going to tell you."
(Emphasis added.) As shown above, the defense made an objection to this argument, moved for a mistrial, and requested an instruction. We note that the trial court overruled defense counsel's request for a mistrial and for a curative instruction, although, after the closing arguments had been completed, it gave an instruction on the defendant's right not to take the stand. The defendant asserts, however, that the curative instruction did not specifically address the comment in question and therefore did nothing to address the prosecutorial error.
The defendant contends that under Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), any comment by a prosecutor on a defendant's failure to testify is reversible error. He also directs our attention to Ex parte Williams, 461 So.2d 852 (Ala.1984), and Stain v. State, 494 So.2d 816 (Ala.Crim.App.1986).
The State argues that the district attorney's comment was not on the defendant's failure to testify, and that his explanatory sentence "made it clear to the jury that he was referring to the defendant's sketchy incriminating statements, which had been admitted into evidence." The State further contends that where the argument would reasonably have been understood by the jury to be a comment on a defendant's statement that is in evidence, rather than on a defendant's failure to testify, there is no Fifth Amendment violation. United States v. Blackwood, 768 F.2d 131, 139 (7th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985); see Grady v. State, 391 So.2d 1095, 1102 (Ala.Crim.App. 1980). The State asserts that because the prosecutor stated to the jury that he was referring to the defendant's taped statement, the jury could not have thought he was speaking regarding a lack of testimony. Finally, the State contends that any error was corrected by the trial court's "very strong" charge on the defendant's right not to testify, to which the defendant's attorney stated that he was satisfied.

*1261 Discussion

For this discussion, we first note that in all criminal prosecutions, the accused shall not be compelled to give evidence against himself. Alabama Constitution, Art. I, § 6.
"On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment."
Ala.Code 1975, § 12-21-220 (emphasis supplied); see also Ex parte Yarber, 375 So.2d 1231, 1233 (Ala.1979); Whitt v. State, 370 So.2d 736, 738-39 (Ala.1979). The United States Supreme Court has held that the Fifth and Fourteenth Amendments to the United States Constitution are also violated when a comment is made by the prosecution on the accused's silence. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); accord Baxter v. Palmigiano, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("Griffin prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt"); United States v. Monaghan, 741 F.2d 1434 (D.C.Cir.1984), cert. denied, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985); Solomon v. Kemp, 735 F.2d 395, 401 (11th Cir.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 952 (1985).
In a case where there has been a direct reference to a defendant's failure to testify and the trial court has not acted promptly to cure that comment, the conviction must be reversed. Ex parte Williams, 461 So.2d 852, 854 (Ala.1984); Whitt v. State, supra; Ex parte Yarber, 375 So.2d 1231, 1234 (Ala.1979); see also Lakeside v. Oregon, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978) (the giving of such a curative instruction over the defendant's objection does not violate the privilege against compulsory self-incrimination). The federal cases have held that "a statement by a prosecutor is improper if it was manifestly intended to be, or was of such a character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify." Marsden v. Moore, 847 F.2d 1536, 1547 (11th Cir.), cert. denied 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); United States v. Betancourt, 734 F.2d 750, 758 (11th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984).
In a case where there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error there must be a close identification of the defendant as the person who did not become a witness. Williams, supra; United States v. Norton, 867 F.2d 1354, 1364 (11th Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989).
This Court in Whitt determined that a comment almost identical to the statement here was a direct comment on the failure of the defendant to testify and that the trial court's failure to promptly remedy the prejudice caused by the comment constituted reversible error. See also Ex parte Yarber, supra; Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975); Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973); Troup v. State, 32 Ala.App. 309, 319, 26 So.2d 611, 220 (1946). In Whitt, supra, the defendant was indicted for first degree murder arising out of a fatality in an automobile collision. He was convicted of second degree murder and the conviction was affirmed by the Court of Criminal Appeals. This Court reversed, however, finding that the district attorney's argument to the jury was an impermissible comment on the defendant's failure to testify. In Whitt, none of the closing arguments appeared in the record except the statements objected to by counsel, including the comment regarding the defendant's failure to testify: "The only person alive today that knows what happened out there that night is sitting right *1262 there." The defendant promptly objected to this remark and made a motion for mistrial.
We stated in Whitt:

"The comment `The only person alive today that knows what happened out there that night is sitting right there' is almost identical to the comment `No one took the stand to deny it' held to be a direct comment on the defendant's failure to testify and held to be reversible error in Beecher [v. State], 294 Ala. 674, 320 So.2d 727 (1975) (per Justice Embry). The comment is very close to the comment made in Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973). There, this Court held (per Justice McCall) that the argument `The only one that said he didn't sell it [marijuana] was the little brother' was also a direct comment on the failure of the defendant to testify and constituted reversible error. It is thus that we must conclude, based on the holding and rationale of those two cases, that the comment by the district attorney in this case was a direct comment on the failure of the defendant to testify and constituted error to reverse."
370 So.2d at 738.
Alabama law clearly holds that "[w]here there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of the defendant to testify, Art. I, § 6 [Const. of Ala. of 1901] is violated." Ex parte Tucker, 454 So.2d 552, 553 (Ala.1984); Ex parte Dobard, 435 So.2d 1351, 1359 (Ala.1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984) (quoting Beecher v. State, 294 Ala. 674, 682, 320 So.2d 727, 734 (1975)). However, as asserted by the State here, the prosecutor does have a right to point out to the jury that the State's evidence does stand uncontradicted, in an appropriate comment to that effect, but the comment must not cross over the line drawn by the right of a defendant not to testify at trial. Ex parte Williams, 461 So.2d 852, 853 (Ala.1984); Ex parte Dobard, supra; Beecher, supra; see also Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (repeated comments by prosecutor that the evidence was uncontradicted was not error in light of promise by defense counsel that the defendant would take the stand); Marsden v. Moore, supra (quoting Duncan v. Stynchcombe, 704 F.2d 1213, 1215-16 (11th Cir. 1983) ("Comments `on the failure of the defense, as opposed to that of the defendant, to counter or explain the testimony presented or evidence introduced is not an infringement on the [defendant's] Fifth Amendment privilege'").
In Williams, the deputy district attorney made the following statement in closing:
"But there's no testimony that he was coerced into making a statement about something he didn't do. You think about that. That's very important when you think about that. There's no evidence presented on the stand that Danny Ray Williams made a statement for something he didn't do."
Ex parte Williams, 461 So.2d at 853. This Court reversed the conviction, with instructions to the Court of Criminal Appeals to remand to the trial court for a new trial. We stated in Williams:
"A prosecutor has the latitude to comment on the fact that the State's evidence is uncontradicted or has not been denied. Beecher v. State, 294 Ala. 674, 682, 320 So.2d 727, 734 (1975). However, a prosecutor may not make comments that step over the line drawn by the right of a defendant not to testify at trial. Beecher, 294 Ala. at 682, 320 So.2d at 734. Comments made by a prosecutor on a defendant's failure to testify are of a highly prejudicial and harmful nature, and this Court must carefully guard against a violation of a defendant's constitutional right not to testify. Whitt v. State, 370 So. 2d 736, 739 (Ala.1979). In a case in which there has been a direct reference to a defendant's failure to testify and the trial court has not acted promptly to cure that comment, the conviction must be reversed. Whitt, 370 So.2d at 739. In a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error *1263 there must be a virtual identification of the defendant as the person who did not become a witness. Ex parte Yarber, 375 So.2d 1231, 1234 (Ala.1979).
"In this case, the Court of Criminal Appeals reasoned that because a third person had witnessed the confession given by the defendant, the prosecutor's comments were aimed solely at the fact that defendant had not produced any witnesses to rebut the State's testimony that no coercion had taken place. In the case of Street v. State, 266 Ala. 289, 96 So.2d 686 (1957), the prosecutor asked the question, `[H]as anyone taken the stand and denied that the defendant signed the statement?' The State had produced two witnesses who testified that the defendant's statement had been properly executed and signed by him. The defendant produced no witnesses challenging this testimony, although a sheriff who had also witnessed the alleged signing did not testify. This Court wrote, `To say that the remarks were intended to reflect only on the failure of the defendant to produce the sheriff as a witness to deny the execution is beyond our reach,' and, `In this case, the only person who could be expected to deny the confession was the defendant.' 266 Ala. at 290, 96 So.2d at 687.
"Similarly, in this case, probably the only person the jury could have expected to rebut the State's evidence that the confession was not coerced was the defendant. The prosecutor mentioned the defendant by name and said that no evidence had been presented on the stand to indicate that the confession had been coerced. Though by an indirect reference, the prosecutor did virtually identify the defendant as the person who did not take the stand. To say that the comment by the prosecutor was merely a remark that the defendant had not called someone other than himself to the stand to testify that his confession was coerced is also `beyond our reach.'
"Therefore, the judgment of the Court of Criminal Appeals must be reversed, and the case remanded to that court with instructions to order a new trial."
461 So.2d at 853-54.
Justice Embry, in his special concurrence in Williams, stated:
"Because the prosecutor made an impermissible comment on defendant's failure to testify, I would hold that defendant is entitled to a new trial for the reason that I deem the closing argument of the deputy district attorney to the jury
"`There is a lot of things said about the statement from the stand. If you want to feel sorry for the fact that maybe Danny Ray Williams was fooled into telling the police about it, about his part in this thing, it might be one thing, it might be one thing if Danny Ray Williams had been coerced or somehow forced into making a statement about a crime he didn't commit; that might be one thing. But there's no testimony that he was coerced into making a statement about something he didn't do. You think about that. That's very important when you think about that. There's no evidence presented on the stand that Danny Ray Williams made a statement for something he didn't do. (Emphasis added [by Justice Embry]),'
to be a direct reference to defendant's failure to testify."
Id. at 854 (Embry, J. concurring specially). We find the rationale expressed in the above language to be controlling here.
The statements in this case do not fall within the bounds set forth in Ex parte Dobard, supra, or Beecher. The district attorney clearly did not comment generally on the State's evidence standing uncontradicted. His statement falls well outside the permitted range available to a district attorney in closing and is far more prejudicial than those statements deemed to be indirect comments in Ex parte Williams, supra. See also Stain v. State, 494 So.2d 816 (Ala.Crim.App.1986) (court unable to distinguish comment from that in Williams). We are also unable to find that the district attorney's statement constituted harmless error under the guidelines *1264 of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), which requires "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"; but see Marsden v. Moore, 847 F.2d 1536, 1548-49 (11th Cir.1988).
The State attempts to use United States v. Blackwood, 768 F.2d 131, 139 (7th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985), as support for its argument. We find that the following occurred in Blackwood, where the defendant was charged with racketeering and extortion:
"Appellant's final contention is that the following comment made by the government in its closing argument violated his Fifth Amendment privilege not to `be compelled in any criminal case to be a witness against himself:
"`Let me just say, we have his words, we have his deeds, we have him holding himself out all of these remarkable coincidences, Dave Ries is supposed to believe I am so gullible that all this stuff would have happened anyway, it doesn't make any difference in the size or the age of these particular cases. Let's get down to what this case is all about: money. What has that defendant told you about money? `(emphasis added [in Blackwood]).
Appellant's counsel objected that the last sentence violated his client's constitutional right to remain silent. The government attorney stated that he was about to quote what appellant had said in regard to money in the tape recorded conversations that had been admitted in evidence. The court ruled that the government could comment on what appellant had said on the tapes.

"While we are wary of any statement which refers to a defendant's failure to testify, we do not believe that any juror could have understood this comment as referring to anything other than appellant's taped statement. The comment was made approximately an hour and twenty minutes into the government's closing argument during which time the government attorney had quoted, paraphrased, and referred approximately one hundred times to what appellant had said in the tapes and the transcripts of his conversations. Following the comment in question, the government attorney proceeded to quote and paraphrase eleven specific instances in the tapes and the transcripts where appellant stated that he was motivated by money.

"Considering the comment in context, we hold that it did not violate appellant's constitutional right. Even assuming that it did, we hold that it was harmless beyond a reasonable doubt. United States v. Hasting, 461 U.S. 499, 510-11 [103 S.Ct. 1974, 1981-82, 76 L.Ed.2d 96] (1983)."
768 F.2d at 139. (Emphasis added.)
The facts in Blackwood are just not analogous to the facts here. The argument presented by the Statethat the district attorney was referring to the defendant's taped statementis without merit. Our examination of the record indicates that the comment was not made in the context of a discussion of the taped statement. The content of the taped statement was simply not argued in the state's rebuttal. In fact, we find that there was no reference to the taped statement made throughout the closing arguments of the assistant district attorney and the district attorney along the lines suggested by the State. We find no argument about the content of the taped statement prior to, or at any point subsequent to, the comment made by the district attorney in that portion of the record containing the district attorney's rebuttal argument.
The district attorney's reference to taped evidence comes after the defense objection to the comment that "he ain't going to tell you." The State's argument that the comment was a permissible reference to the taped statement completely overlooks the obvious inference available to the jury that the defendant did not take the stand so as to contradict or amplify his statement. Given the context of the rebuttal, it is *1265 difficult to imagine a more specific comment on Wilson's failure to testify, notwithstanding the district attorney's later attempt to limit the comment to a reference to the taped statement.
In connection with Ala.Code 1975, § 12-21-220, the case law in Alabama contains a subsidiary doctrine that prevents a reversal of the case if the trial court sustains an objection to improper remarks and promptly and appropriately instructs the jury of the impropriety of those remarks. The trial court here overruled the objection, and we do not find the instruction given by the trial court here to be prompt, or to have been appropriately given. Here, the instruction given fails to clearly address or identify for the jury the exact statement made by the district attorney that was to be remedied. Absent such identification, the instruction can not be taken as "appropriately given" to address the state's impermissible argument.
At a minimum, under such circumstances, the trial judge should sustain the objection and immediately instruct the jury as to the impropriety of the remark made by the district attorney. In giving a curative instruction on the defendant's right not to testify, the trial judge should read the statute and explain thoroughly and immediately to the jury that the defendant's failure to testify in his own behalf shall not create any presumption against him. As we previously stated in Whitt, supra:
"We suggest that, at a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor's remarks will be sufficiently vitiated so that such error is harmless beyond a reasonable doubt. [United States] v. Brown, 546 F.2d 166 (5th Cir.1977); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Beecher v. State, [294 Ala. 674, 320 So.2d 727 (1975) ]."
A curative instruction in a situation of this type, to be of any value, must be given immediately after the harmful statement is made. Further, where there can be any reasonable doubt as to the particular statement in question, the statement should be explicitly identified to the jury so that it can know what must not be considered. Anything less can in no way cure the error. See Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975); Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973); see also United States v. Robinson, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988) (comments by prosecutor that respondent could have explained his story to the jury were in response to references by defendant's counsel to the Government's failure to provide respondent an opportunity to "explain" his side of the story and were not reversible error); Troup v. State, 32 Ala.App. 309, 319, 26 So.2d 611, 620 (1946) (the case was not reversed due to the prompt and appropriate instructions given to the jury).
We find here that the comment made by the district attorney was a direct comment on the defendant's failure to testify and violated the defendant's rights as found under the United States Constitution, the Constitution of Alabama of 1901, and Ala. Code (1975), § 12-21-220. We cannot agree that the comment made by the district attorney could have been understood by the jury only as a reference to the defendant's "sketchy incriminating statement." The judgment is therefore due to be reversed and the cause remanded to the Court of Criminal Appeals with instructions to order a new trial.
REVERSED AND REMANDED.
JONES, ALMON, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
*1266 MADDOX, Justice (dissenting).
I must respectfully dissent. After the district attorney made his improper comment, defense counsel objected and moved for a mistrial. After the trial judge denied the motion for a mistrial, defense counsel did not ask the trial judge to give the jury a prompt curative instruction. Nonetheless, the trial judge later gave a curative instruction specifically referring to the district attorney's comment, and defense counsel stated that he was satisfied with that instruction. I do not think that a trial judge, even in a death penalty case, must automatically instruct the jury to ignore an improper comment, especially when the defendant does not ask for such an instruction; and I am reluctant to find reversible error when defense counsel states that he is satisfied with the curative instruction.
NOTES
[1] Id., 451 U.S. at 472, 101 S.Ct. at 1877. The Supreme Court noted that the Fifth Circuit "carefully left open" the possibility that a defendant who intends to offer psychiatric evidence at the penalty phase of a trial could be precluded from offering such evidence unless he consents to examination by the State's own psychiatric expert. Estelle, 451 U.S. at 466 n. 10, 101 S.Ct. at 1874 n. 10.