576 So.2d 649 (1991)
Ex parte Robert Charles WILLIAMS.
(Re Robert Charles Williams v. State).
89-1128.
Supreme Court of Alabama.
January 11, 1991.
Rehearing Denied February 15, 1991.
Raymond Johnson, Montgomery, for petitioner.
Don Siegelman, Atty. Gen., and Beth Slate Poe, Asst. Atty. Gen., for respondent.
ALMON, Justice.
Robert Charles Williams was convicted of first degree rape and was sentenced to life imprisonment without parole. That judgment was affirmed by the Court of Criminal Appeals. Williams v. State, 564 So.2d 116 (Ala.Crim.App.1990). This Court granted a writ of certiorari to determine if, in his closing argument to the jury, the prosecutor made an impermissible comment on Williams's failure to testify. The record shows the following:
"(Whereupon, the State made their closing statement, during which the following occurred:)
"MR. BECHER:  He is charged with rape. He hasn't told you he didn't do it. He hasn't told you  He gave a statement 
"MR. JOHNSON: We object to that. He keeps going on about that. That is not admissible.
"MR. BECHER: He did give a statement. He waived his right 
"(Whereupon, there was a bench conference out of the hearing of the court reporter and jury.)
"(Whereupon, the State completed the closing statement without further objection.)"
During a hearing on the motion for a new trial the prosecutor denied that he was commenting on Williams's failure to testify. Instead, he contended that he was only trying to point out to the jury that Williams had made a statement to the police wherein he stated that he had had intercourse with the victim but claimed that it was consensual.
The prohibition against compelling a defendant to testify against himself in a criminal proceeding is a fundamental component of the right to a fair trial, U.S. Const. amendments V and XIV; Ala. Const. art. I, § 6, and that prohibition is *650 violated if a prosecutor makes a comment to the jury on the defendant's silence. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Ex parte Yarber, 375 So.2d 1231 (Ala.1979). To guarantee the enforcement of that prohibition, our legislature has provided in Ala. Code 1975, § 12-21-220:
"On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment."
(Emphasis added.)
In Ex parte Wilson, 571 So.2d 1251 (Ala. 1990), the defendant had been convicted of murder. During Wilson's trial the prosecutor made a statement very similar to the one made by the prosecutor during Williams's trial. In Wilson, as in this case, the State argued that the prosecutor was merely commenting on a statement that had been made by the defendant before trial, not on his failure to testify. This Court rejected that argument and reversed Wilson's conviction:
"The State's argument that the comment was a permissible reference to the taped statement completely overlooks the obvious inference available to the jury that the defendant did not take the stand so as to contradict or amplify his statement. Given the context of the rebuttal, it is difficult to imagine a more specific comment on Wilson's failure to testify, notwithstanding the district attorney's later attempt to limit the comment to a reference to the taped statement."
Wilson, supra at 1261 (emphasis in original).
As in the Wilson case, it is difficult to imagine a more direct comment on the defendant's failure to testify. Even conceding that the prosecutor did not intend for his words to have that effect, the clear import of his statement must have been understood by the jury as a reference to the defendant's silence, and therefore substantially prejudiced Williams's right to a fair trial. In his dissenting opinion, Justice Maddox points out that the prosecutor attempted to explain, on the record, that his statement was not a reference to Williams's failure to testify. However, that explanation was given more than two months after the jury had been dismissed, during a hearing on Williams's motion for new trial. As a result, it did nothing to cure the prejudicial effect of the prosecutor's comment.
For the reasons stated, the judgment of the Court of Criminal Appeals is reversed, and that court is directed to remand this cause for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
The defendant was convicted of rape in the first degree. The Court of Criminal Appeals affirmed his conviction. This Court granted the writ to determine whether the prosecutor, in his closing argument, improperly commented on the defendant's failure to testify. The prosecutor stated, "He hasn't told you he didn't do it. He hasn't told you.... He gave a statement." At that point, the defendant's counsel made a general objection, and a bench conference was held outside the hearing of the court reporter.
Although it appears that these comments by the prosecutor were highly irregular and prejudicial, I am of the opinion, after reviewing the record, that the comments are not so prejudicial that this Court should reverse the defendant's conviction. The prosecutor, on the record, explained his comments and contended that he was not commenting on the defendant's silence, but was merely reiterating the fact that the defendant had confessed to having had sexual *651 intercourse with the victim. There was evidence that the defendant had, in fact, made a statement to the arresting officer indicating that the intercourse was consensual, and evidence of this statement was admitted. (See Appendix, consisting of pages 162-163 of the reporter's transcript.)
In view of these facts, I believe that the prosecutor's explanation of his comment, coupled with the defendant's failure to make a specific objection and to request a curative instruction, shows that the statements by the prosecutor were not reversible error. It is also noteworthy that the trial judge gave a detailed jury instruction concerning the defendant's right not to testify. I would quash the writ.
STEAGALL, J., concurs.
APPENDIX
"Q [Bob Becher, Assistant District Attorney:] Did he understand what you told him?
"A [Mark Thompson, Investigator, Montgomery Sheriff's Department:] He advised me that he did.
"Q At that time, did he give you a statement?
"A He gave me his version of what happened that night.
"Q What did he tell you was his version of what happened that night?
"A Do you want me to read exactly what I wrote or summarize it?
"Q When did you make your report?
"A The following morning.
"Q Would it help you to be able to tell the jury just what you remember he said without adding anything or leaving anything out, if you refer to your report?
"A I'll just read it.
"Q What I'm asking you, would that help you to be able to refer to it?
"A Yes, sir.
"Q So that you don't tell the jury anything that wasn't said?
"A Yes, sir.
"Q You want to tell them just what it was that you wrote down?
"A Yes, sir.
"Q What you wrote down is what he told you?
"A Yes, sir.
"Q What is it he told you?
"A At about 3:00 p.m. the same date, 7-13-88, this writer verbally advised Robert Chuck Williams, white male, of his constitutional rights. He stated that he understood his rights. During questioning Williams stated to this writer that he had seen three people walking toward the bridge on 31 North, two white males and a white female. Williams stopped and asked if they needed a ride. The males said they did not but that the female did. Williams said he stopped at the Bee Line Station across the bridge in Autauga County and purchased some cigarettes, and that the female had given him ten dollars to do so. From there he took her home. At that point the female reached over and grabbed him between his legs. They exited the car and he placed the Nasty Feet T-shirt on the hood and they had sex at that point. Mr. Williams  At that point I inquired of Mr. Williams if he would consent to a search of his vehicle, an Oldsmobile, tag number 4AD0273. He signed a consent form at 3:35 p.m. the same date. And then it goes into what we found in the search.
"Q So he said he placed the Nasty Feet T-shirt on the hood and had sex with Ms.... on the hood?
"A Yes, sir.
"Q And then what did he say happened after that?
"A They exchanged telephone numbers and he left.
"Q That was all that you remember him telling you?
"A Yes, sir.
"Q Did you write down everything that he told you?
"A To the best of my memory, yes, sir.
"Q This was done the very next day?
"A Yes, sir."
*652 HOUSTON, Justice (dissenting).
I dissented in Ex parte Wilson, 571 So.2d 1251 (Ala.1990), because I did not consider the prosecutor's comment to be a comment on the defendant's failure to testify. Likewise, under the facts in this case, I do not consider the prosecutor's comment to be a comment on the defendant's failure to testify at trial. Williams made a pretrial statement, after having been advised of his constitutional rights, in which he said that he had had consensual sex with the prosecutrix. That statement was admitted into evidence without objection: "At that point the female reached over and grabbed [Williams] between the legs. They exited the car and [Williams] placed the Nasty-Feet T-shirt on the hood and they had sex at that point."
I would quash the writ as having been improvidently granted. Therefore, I dissent.