**UNITED STATES of America, Appellee,**

v.

**Ira BLACKWOOD,
Defendant-Appellant.**

**No. 84-2852.**

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 1985.
Decided July 11, 1985.

John H. Newman, Asst. U.S. Atty., Chicago, Ill., for appellee.

Warren Lupel, Lupel & Amari, Chicago, Ill., for defendant-appellant.

Before ESCHBACH and POSNER, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Senior Circuit Judge.

On December 14, 1983, Ira Blackwood (appellant) was indicted by a federal grand jury and charged with one count of racketeering (Count One) in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) (1982), and ten counts of extortion (Counts Two through Eleven) in violation of the Hobbs Act, 18 U.S.C. § 1951 (1982). On July 2, 1984, the United States District Court for the Northern District of Illinois,

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

James B. Moran, *District Judge*, denied appellant's motion to dismiss the indictment. On August 10, 1984, the court entered judgment on a jury verdict finding appellant guilty on all eleven counts. Appellant was sentenced on October 18, 1984 to two concurrent terms of imprisonment of seven years each on Counts One and Two, to be followed by nine concurrent terms of probation of five years each on Counts Three through Eleven. The court ordered a stay of execution pending appeal.

## I.

Appellant became a police officer with the Chicago Police Department in 1957. He became secretary of the Department's Traffic Court Unit in 1974. His office was in the Cook County Traffic Court building until February 1983 when he became a court sergeant in one of the branch courts of the Cook County Circuit Court.

Appellant's indictment stemmed from the Federal Bureau of Investigation undercover investigation known as Operation Greylord which concerned alleged corruption in the Cook County Circuit Court. Appellant was indicted for soliciting and receiving bribes between December 1981 and May 1983 from FBI Agent David Ries to influence the disposition of cases pending in various branch courts of the Cook County Circuit Court in violation of 18 U.S.C. §§ 1951 and 1962(c).

In September 1981, appellant was introduced to Agent Ries by former Judge Brocton Lockwood who had contacted the United States Department of Justice about criminal violations he believed were occurring in the Traffic Court building. Judge Lockwood agreed to cooperate with the investigation. He posed as a corruptible judge in the Cook County Circuit Court. Agent Ries posed as a private defense attorney new to the City of Chicago who was looking for a contact to help him in his practice of law in the Cook County court system which we have described above.

**1.** Nine of the cases were contrived by the FBI; only one was based on events which actually

Agent Ries paid appellant a total of $4400 to influence judicial decisions in the ten circuit court misdemeanor cases[1] which formed the basis of the indictment.

On appeal, appellant claims that his indictment and conviction for racketeering and extortion cannot stand as a matter of law; that the court committed reversible error in its evidentiary rulings; and that the government violated his Fifth Amendment privilege against self-incrimination by commenting on his failure to testify. We shall consider each of these claims seriatim.

## II.

### (A) HOBBS ACT

■ The Hobbs Act, 18 U.S.C. § 1951, proscribes extortion which affects interstate commerce. The Act defines extortion as "the obtaining of property from another, with his consent, induced ... under color of official right." 18 U.S.C. § 1951(b)(2). A public official's use of his office to obtain money not due him or his office is "the crux of the statutory requirement of 'under color of official right'". *United States v. Braasch*, 505 F.2d 139, 151 (7th Cir.1974), *cert. denied*, 421 U.S. 910 (1975).

> "It matters not whether the public official induces payments to perform his duties or not to perform his duties, or even ... to perform or not to perform acts unrelated to his duties which can only be undertaken because of his official position. So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951." *Id.*

In *United States v. Rindone*, 631 F.2d 491 (7th Cir.1980), we held that

> "*De jure* ability to perform the promised act need not be present; sufficient is 'a reasonable belief that the state system so operated that the power in fact of the defendant's office included the effective authority' to fulfill the promise." *Id.* at 495, *quoting United States v. Mazzei*,

took place.

521 F.2d 639, 643 (3rd Cir.), *cert. denied,* 423 U.S. 1014 (1975).

Appellant contends that the court erred in denying his motion to dismiss Counts Two through Eleven which charged him with violating the Hobbs Act. He contends that those counts did not allege extortion "under color of official right", since as a matter of law it is unreasonable for the victim of an extortion to believe that a police officer assigned to the Traffic Court Unit of the Chicago Police Department, by virtue of his official position, has the power to affect the disposition of cases being tried in the Circuit Court of Cook County. We cannot say that as a matter of law appellant's victim could not reasonably have believed that appellant's official position enabled him to keep his promise to influence judicial decisions by passing bribes on to judges in the Traffic Court and to judges Agent Ries believed had previously worked in the Traffic Court. *United States v. Kaye,* 586 F.Supp. 1395, 1405 (N.D.Ill.1984). We hold that the court correctly denied appellant's motion to dismiss the Hobbs Act counts.

Appellant also contends that the evidence adduced at trial was insufficient to sustain the conviction on Counts Two through Eleven, since the evidence failed to establish that Agent Ries, the victim of the extortion, reasonably believed that appellant, by virtue of his official position, could influence the judicial disposition of cases heard in the Traffic Court and other local courts. We must view the evidence in the light most favorable to the government, *United States v. Crowley,* 504 F.2d 992, 995 (7th Cir.1974), and affirm the conviction if there was some competent and substantial evidence before the jury which fairly tended to sustain the verdict. *Abrams v. United States,* 250 U.S. 616, 619 (1919).

Clearly, appellant's official position did not encompass the power to render judicial decisions. There was, however, competent and substantial evidence before the jury from which it could have concluded that Agent Ries reasonably believed that appellant's power to affect judicial determinations was due—at least in part—to his official position as a patrolman assigned to the Traffic Court Unit who worked as a liaison between the court and the police department.

In his opening statement at trial, appellant's counsel made clear that appellant's defense to the Hobbs Act charges was that "no person with any semblance of reasonableness could have believed that [appellant] possessed any type of clout, a patrolman on the Chicago police force." The reasonableness of Agent Ries' belief was explored in detail in 169 pages of direct testimony by Agent Ries, followed by 302 pages of cross-examination. Ries testified regarding his belief about the power of appellant's position, his conversations with appellant, his observations of appellant, and appellant's independent knowledge of the court proceedings in question. Approximately 400 pages of transcript from taped conversations with appellant were reproduced for the jury.

Agent Ries testified that he saw appellant at various locations in the Traffic Court building—appellant's office, the hallways of the first three floors, various courtrooms, the Corporation Counsel's office, and the Cook County Circuit Court Clerk's office. Agent Ries observed appellant talking to policemen, various members of the public, traffic court defendants, court clerks, court administrators, bailiffs, private defense attorneys, attorneys on the staff of the Corporation Counsel, assistant state's attorneys for Cook County, and Traffic Court judges.

Agent Ries further testified that each time he paid appellant money in regard to a particular case, his state of mind was

"that Officer Blackwood, by virtue of his position in the traffic court section and as a court sergeant, and by virtue of the knowledge and experience gained from that position, and by virtue of the people he knew, the judges, other court personnel that he knew, that he had the ability to influence the disposition of cases heard in Cook County Circuit Court.

.    .    .    .    .

My state of mind during this time period was based on several things, one of which was my general conversations with Ira, his demeanor, the tone of voice, his inflections, how he handled himself, how he carried himself.

Likewise, it was based on the people with whom I had seen him speaking, the places that I had seen him, the people about whom he spoke and the way he spoke about them.

It was also based on the general structure of our dealings in these cases where I would give him the information about the cases, and he would meticulously copy it down, and that later on he would get back to me telling me whether he could do anything on the case and what it was going to cost me.

Likewise, that if there was a specific judge that was going to be hearing a case that he could not influence, he would, likewise, tell me that.

. . . . .

It was also based on his ability to know things about these cases that I did not tell him, so that it indicated to me that he had an independent source of knowledge about these things.

On the 11 cases on which we had prior arrangements on, 10 of those cases were resolved in a favorable manner.

The two judges that I talked to in regards to these cases, both of them acknowledged some prior contact about these cases.

In the case of [Talmas] Benham, Officer Blackwood was able to produce tangible results for me without the defendant ever showing up in court, without me showing up in court. I received a bond slip through the Circuit Court of Cook County.

Likewise, when the government did have [a] wiretap on his phones, Officer Blackwood did know about that. He told me about that several times."

On cross-examination, Agent Ries testified that he believed that appellant had knowledge of the type of judge that would serve in the particular courtrooms and that appellant was able to influence a decision with some of the judges who often sat there.

Agent Ries testified that appellant told him on April 12, 1982 that he took "care of parking tickets for several judges, and that he knew several judges from the time that he had been in traffic court as they passed through there." Appellant stated on February 17, 1983 in a tape recorded conversation with Agent Ries that, if a judge had a problem, he would see appellant, that the judges came to him "for tickets, or for any car fixin', or anything they needed", that "that's how I got in with all the judges.... [G]o see Ira. That was the name of the game.... So I got in with every judge...."

Based on the above evidence, a jury could have found that Agent Ries reasonably believed that appellant had the power, through his official position and the connections and contacts it gave him to the personnel, workings, and records of the Circuit Court, to influence the judicial decisions in the cases for which appellant received bribes. We hold that there is no basis for disturbing the jury's resolution of this issue.

■ Appellant's final contention regarding the Hobbs Act counts is that the court erred in failing to instruct the jury that Agent Ries' belief that appellant, by virtue of his official position, had the power to influence judicial decisions must have been reasonable "given Reis' [sic] position, his knowledge and experience". Since appellant never requested the court to give such an instruction and failed to object to the instructions given on the ground now raised on appeal, he may not assign error in this respect except on the ground of plain error. Fed.R.Crim.P. 30, 52(b).

■ The court gave the following instructions to the jury concerning the element of "under color of official right":

"Extortion under color of official right means the obtaining of money or property by a public employee through the wrongful use of his position where the

money or property obtained was not lawfully due and owing to him or to the position which he held. It includes the misuse of one's position of employment in order to induce payments. The government must prove beyond a reasonable doubt that it was reasonable for the persons described in Counts II through XI to believe that the defendant had power to obtain favorable results in the FBI-created cases.

I further instruct you that in considering whether extortion under color of official right was committed, it does not matter who induced the payments. If the public employee knows that the motivation of the alleged victim named in the indictment focused on the employee's public position and that the money or property that was allegedly paid by the victim was not lawfully due and owing to the employee or to the office which he held, that is sufficient to satisfy the requirements of the law of extortion under color of official right so long as I have said the government also proved that it was reasonable for the persons described in counts II through XI to believe that the defendant had the power to obtain favorable results in the FBI-created cases.

.        .        .        .        .

Extortion under color of specific [sic] right does not require proof of specific acts by an employee demonstrating force, threat or use of fear so long as the alleged victim consented because of the office of [sic] position held by the employee to whom the alleged victim paid the money or property.

.        .        .        .        .

The public employee need not control the result promised so long as the extorted party possesses a reasonable belief in the employee's power to obtain the results."

The court also gave an interim instruction to the jury during the cross-examination of Agent Ries that the government must

"prove beyond a reasonable doubt that Agent Ries in paying money reasonably believed that the defendant, because of his public position, had the power to affect the disposition of cases."

Since the instructions given adequately apprised the jury that the government must prove that it was reasonable for Agent Ries to believe that appellant had the power to influence judicial decisions, and that Agent Ries focused on appellant's official position in paying the bribes, we hold that there was no plain error.

## (B) **RICO**

■■■ RICO, 18 U.S.C. § 1962(c), makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Appellant contends that the court erred in denying his motion to dismiss Count One which charged him with racketeering in violation of RICO, since the indictment failed to charge that he was associated with an enterprise that was organized for the purpose of carrying on racketeering activity. The enterprise specified in the indictment was the Cook County Circuit Court. Appellant's contention is without merit. RICO encompasses both legitimate and illegitimate enterprises. *United States v. Turkette,* 452 U.S. 576, 578–83 (1981).

■■■ Appellant also contends that the evidence adduced at trial was insufficient to sustain the conviction on Count One. He concedes that the government proved that he was associated with a legitimate enterprise and that he committed racketeering activity while so associated. He contends that it failed to prove that he conducted his racketeering activity through the Cook County Circuit Court. At issue is whether there was sufficient evidence of a connection between appellant's racketeering activity and the affairs of the Circuit Court to support a jury finding that appellant direct-

ly or indirectly conducted or participated in the conduct of the affairs of the Circuit Court through a pattern of racketeering activity. *See United States v. Nerone*, 563 F.2d 836, 852 (7th Cir.1977), *cert. denied*, 435 U.S. 951 (1978). To establish the requisite nexus, the government must show that "(1) the defendant has in fact committed the racketeering acts as alleged; (2) the defendant's position in the enterprise facilitated his commission of the racketeering acts, and (3) the predicate acts had some effect on the lawful enterprise." *United States v. Cauble*, 706 F.2d 1322, 1333 (5th Cir.1983) (footnote omitted), *cert. denied*, — U.S. —, 104 S.Ct. 996 (1984). Effect on the lawful enterprise is established by proof that "the racketeering acts affected the enterprise in some fashion." *Id.* at 1333 n. 24.

■ We hold that here there was sufficient evidence from which a jury could find that appellant sought to influence the disposition, or affect the handling, of criminal cases through solicitation of bribes, falsification of Circuit Court records, use of Circuit Court offices and equipment, and contact with Circuit Court judges.

### III.

Appellant contends that certain of the court's evidentiary rulings constituted reversible error. He claims that the court erred in admitting testimony regarding his prior bad acts and testimony to prove Agent Ries' state of mind regarding appellant's power, by virtue of his official position, to influence judicial decisions.

Judge Lockwood was permitted to testify that appellant told him

"that he had a lot of clout within the system, that he had been in trouble nine years before, that some big people were ready to jump off bridges at that time, that he kept his mouth shut, and that as a result everybody trusted him. He took the heat at that time, and charges were eventually dismissed against him."

Following this testimony, the court gave a limiting instruction that the testimony was to be considered solely in connection with the "state of mind of people respecting what the defendant could or couldn't do." Appellant asked the court to declare a mistrial on the ground that the testimony "clearly says to the jury [appellant] was guilty in the past". After the court denied appellant's request, appellant rejected the court's offer to further instruct the jury on its use of the testimony.

■ While "[e]vidence of other ... acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith", it "may, however, be admissible for other purposes...." Fed.R.Evid. 404(b). Here, the evidence was admitted to prove the reasonableness of Agent Ries' belief that appellant was extorting him under color of official right. Much of what Agent Ries reasonably could believe about appellant's power, by virtue of his official position, was influenced by his knowledge of the conversations Judge Lockwood had with appellant. Evidence of a victim's state of mind is an essential element of the government's case in a Hobbs Act prosecution for extortion under color of official right. *United States v. Craig*, 573 F.2d 513, 520 (7th Cir.), *cert. denied*, 439 U.S. 820 (1978). The evidence, therefore, is admissible to prove that element so long as the danger of unfair prejudice does not outweigh its probative value. Fed.R.Evid. 403. The court considered the prejudice to appellant from the references to being "in trouble" and "charges" being "eventually dismissed against him", but noted that the statement "was couched in terms of keeping his mouth shut, which is more a matter of knowing and not telling". The court concluded that, in light of appellant's defense that the victim's belief was unreasonable, the likelihood of prejudice was lessened. The court admitted the evidence for its probative value in establishing the reasonableness of the victim's belief. The admissibility of such evidence is within the sound discretion of the court. We hold that the court did not abuse its discretion in admitting the evidence and refusing to declare a mistrial.

■ Appellant also contends that certain evidence was inadmissible hearsay—Agent Ries' statements regarding his state of mind during the investigation, Ries' testimony regarding appellant's alleged statements to him, and a taped conversation between two persons not called as witnesses which Ries testified affected his state of mind regarding appellant's ability to influence a particular judge. Since the evidence was offered to show that Ries, as the victim of appellant's extortion, reasonably believed that appellant had the power by virtue of his official position to influence the judicial disposition of cases, and was not offered "to prove the truth of the matter asserted", it was not inadmissible as hearsay. Fed.R.Evid. 801(c).

We hold that the court did not err in its evidentiary rulings.

### IV.

■ Appellant's final contention is that the following comment made by the government in its closing argument violated his Fifth Amendment privilege not to "be compelled in any criminal case to be a witness against himself":

> "Let me just say, we have his words, we have his deeds, we have him holding himself out all of these remarkable coincidences, Dave Ries is supposed to believe I am so gullible that all this stuff would have happened anyway, it doesn't make any difference in the size or the age of these particular cases. Let's get down to what this case is all about: money. *What has that defendant told you about money?*" (emphasis added).

Appellant's counsel objected that the last sentence violated his client's constitutional right to remain silent. The government attorney stated that he was about to quote what appellant had said in regard to money in the tape recorded conversations that had been admitted in evidence. The court ruled that the government could comment on what appellant had said on the tapes.

While we are wary of any statement which refers to a defendant's failure to testify, we do not believe that any juror could have understood this comment as referring to anything other than appellant's taped statements. The comment was made approximately an hour and twenty minutes into the government's closing argument during which time the government attorney had quoted, paraphrased, and referred approximately one hundred times to what appellant had said in the tapes and the transcripts of his conversations. Following the comment in question, the government attorney proceeded to quote and paraphrase eleven specific instances in the tapes and the transcripts where appellant stated that he was motivated by money.

Considering the comment in context, we hold that it did not violate appellant's constitutional right. Even assuming that it did, we hold that it was harmless beyond a reasonable doubt. *United States v. Hasting*, 461 U.S. 499, 510–11 (1983).

### V.

To summarize: We hold that the district court correctly denied appellant's motion to dismiss the indictment and correctly entered judgment on the jury verdict of guilty on all counts. We further hold that appellant has failed to establish any reversible error in the court's evidentiary rulings or in the court's ruling with respect to the government's closing argument.

Appellant was convicted after a fair trial on the basis of overwhelming evidence of serious crimes committed over a period of a year and a half. We order that the mandate issue forthwith.

AFFIRMED.