[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 877 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 878 
The appellant, Dominique Ray, was charged with the capital offense of murder committed during rape in the first degree, a violation of §13A-5-40(a)(3), Ala. Code 1975. The State subsequently moved to quash the indictment and to substitute a new indictment, charging both capital murder during rape in the first degree, as previously charged, and capital murder during robbery in the first degree, a violation of §13A-5-40(a)(2), Ala. Code 1975. The trial court granted the motion. A jury found the appellant guilty of both charged offenses and recommended, by a vote of 11 to 1, a sentence of death. After a sentencing hearing, the trial court sentenced the appellant to death by electrocution.
The trial court made the following findings of fact concerning the offenses:
 "On or about August 16, 1995, Lawrence Milton was operating a tractor and bushhog just off County Road 62 in Dallas County, Alabama. As Mr. Milton went about his duties bushhogging the field, he discovered the skeletal remains of Tiffany Harville, who had been missing since on or about July 15, 1995.
 "Tiffany Harville was 15 years of age at the time of her death. Mary Coleman, Tiffany's mother, described the last time she [had] communicated with her daughter, Tiffany, in July 1995. Mrs. Coleman stated that she, Mrs. Coleman, was leaving town for the evening to attend a Union Workshop. She left Tiffany approximately $6 spending money. Upon Mrs. Coleman's return to Selma on Sunday afternoon, she discovered that her daughter had not been seen since 8:00 p.m. Saturday night. Mrs. Coleman described the efforts made to locate Tiffany, and further reported that the Defendant, Dominique Ray, came to her house to offer his assistance and share Mrs. Coleman's concern for her missing daughter. She testified that the Defendant offered to distribute fliers, and at one time, offered reward money to locate Tiffany. On two other occasions before Tiffany's body was discovered, the Defendant called Mrs. Coleman on the phone to make a general inquiry as to Mrs. Coleman's condition.
 "The investigation into the death of Tiffany Harville continued for several months. There were numerous leads and suspects, and at one time an individual was arrested and held without bond for the murder of Tiffany Harville. Finally, the codefendant in this case, Marcus D. Owden, came forward and gave the police a full accounting of the events and circumstances surrounding the death of Tiffany Harville. Owden testified at [t]rial against the Defendant Ray that it was their intent to form a mob or a gang, and that they had intended to find Tiffany Harville for the purpose of having sex with her. Owden stated that he did not know Tiffany, but that Ray did and that it was Ray's idea to go and get Tiffany. Owden testified that they had talked about having sex with her before they went to her house to get her. On the evening of July 15, 1995,[1] Owden and Ray picked Tiffany up and proceeded to take her to [the] Sardis community located in Dallas County, Alabama, on or near Highway 41. Owden stated that they had decided they were going to ask her for sex first, and if that didn't work, that they would take it. He described during his testimony *Page 880 
how he and the Defendant Ray [had] had sex with her and how she [had] pleaded for help.
 "Owden testified that Ray cut her throat and that he, Owden, cut her as well. He then described that they took part of her clothing along with her purse, which contained $6 or $7.
 "In addition to the testimony of Marcus D. Owden, the State offered into evidence the statement of the Defendant, Dominique Ray. In his statement, he admits to his role in the rape and murder of Tiffany Harville, yet attempts to establish Owden as the primary perpetrator.
 "Dr. Lauridson, the State Medical Examiner with the Alabama Department of Forensic Sciences, described 12 defects in the skull which were consistent with stab-like defects. He [wa]s unable to testify with regard to soft tissue wounds, due to the decomposition of the body."
 I.
The appellant first contends that the trial court erred in allowing the State to offer evidence, during the punishment phase, that he had been convicted of another capital offense. Specifically, he argues that the jury should not have been allowed to consider as an aggravating circumstance his 1999 capital conviction for the murders of Earnest Mabins and Reinhard Mabins because that conviction was obtained after the current offenses were committed. He also argues that knowledge of the 1999 conviction made possible an arbitrary and capricious sentence because, he says, the jury would be unable to assign little or no weight to another capital conviction in its consideration of the present capital murder case.
At the beginning of the punishment phase of the trial, the prosecutor informed the trial court that the State intended to offer as an aggravating circumstance the fact that, on or about February 24, 1999, the appellant had been convicted of capital murder in another case in Dallas County. The appellant's counsel objected to "the use of the prior capital conviction as an aggravating circumstance and letting this jury have knowledge of the prior capital conviction." When documents evidencing the prior conviction subsequently were admitted into evidence, counsel objected that "it is constitutionally impermissible to present that [the prior conviction] as an aggravating circumstance in the presence of this jury."
Objections to the admission of evidence along with specific grounds for the objection must be made when the evidence is offered, to allow the trial court to rule. Jelks v. State, 411 So.2d 844 (Ala.Crim.App. 1981). Here, the appellant objected at trial on the ground of unconstitutionality,[2] but he did not object on either of the two grounds he now argues on appeal. Errors that have not been brought to the trial court's attention are reviewed according to the "plain-error" standard of Rule 45A, Ala.R.App.P. "`Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." Ex parteWomack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986 (1983).
With regard to the first claim, the trial court properly admitted the appellant's prior conviction into evidence because, although the conviction occurred after the commission of the current offense, it occurred before the date of the sentence *Page 881 
hearing. Section 13A-5-39(6), Ala. Code 1975, defines the term "previously convicted" as that term is used in § 13A-5-49(2) with regard to aggravating circumstances, and "prior criminal activity" as that term is used in § 13A-5-51(1) with regard to mitigating circumstances, as follows: "As used in sections 13A-5-49(2) and13A-5-51(1), these terms refer to events occurring before the date of the sentence hearing."
In Ex parte Siebert, 555 So.2d 780, 784 (Ala. 1989), cert. denied,498 U.S. 963 (1990), the Alabama Supreme Court stated:
 "In essence, Siebert's argument appears to be that under § 13A-5-49(2), only convictions obtained prior to the commission of the crime for which the defendant is being sentenced are admissible.
 "This argument directly contradicts the relevant Alabama statute. Code 1975, § 13A-5-39(6), provides:
 "`PREVIOUSLY CONVICTED AND PRIOR CRIMINAL ACTIVITY. As used in sections 13A-5-49(2) [aggravating circumstances] and 13A-5-51(1) [mitigating circumstances], these terms refer to events occurring before the date of the sentence hearing.'
 "The Talladega County conviction was obtained before the sentencing hearing was held in this case. Therefore, according to the plain language of the statute, the minute entry was properly admitted into evidence, and Siebert's allegation of error must fail."
The trial court did not err in admitting evidence of the appellant's prior conviction; the use of a conviction that occurs before the date of the sentencing hearing as an aggravating circumstance is proper under Alabama caselaw. See Ex parte McWilliams, 640 So.2d 1015 (Ala. 1993), aff'd, 666 So.2d 90 (Ala. 1995), cert. denied, 516 U.S. 1053 (1996);Smith v. State, 698 So.2d 189 (Ala.Crim.App. 1996), aff'd, 698 So.2d 219
(Ala.), cert. denied, 522 U.S. 957 (1997).
With regard to the claim that the jury would accord too heavy a weight to the appellant's prior conviction because it was a capital offense, there is nothing in the record that indicates that the jury was influenced by prejudice or by any other arbitrary factor. In addition, the appellant's failure to object weighs against a finding of prejudice.Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App. 1990), aff'd, 577 So.2d 531
(Ala.), cert. denied, 502 U.S. 886 (1991). The trial court allowed into evidence only the fact of the appellant's prior conviction. The parties agreed that documents supporting that conviction would not be shown to the jury, so that the jurors would not be aware of the facts contained in the sentencing order or any other information that could be prejudicial.
In Jones v. State, 420 So.2d 165 (Ala.Crim.App. 1983), aff'd,450 So.2d 171 (Ala.), cert. denied, 469 U.S. 873 (1984), the State proved the fact of the defendant's prior capital conviction. In Ex parteSiebert, supra, the trial court admitted evidence of the appellant's prior conviction for murder made capital because it was committed during robbery in the first degree. The Alabama Supreme Court affirmed the use of the prior capital conviction as an aggravating circumstance in Siebert's subsequent conviction of capital murder under §13A-5-40(a)(10), Ala. Code 1975. Here, similarly, the trial court properly allowed consideration of the appellant's prior capital conviction as an aggravating circumstance in the present case. *Page 882 
 II.
The appellant also contends that the trial court erred in allowing certain comments by the prosecutor during his arguments to the jury.
 A.
The appellant argues that the prosecutor improperly commented on his failure to testify when he made the following statement in closing argument during the guilt phase of the trial:
 "I'd like to think based on what I know in this case and what you have heard — I change that, from what you've heard in this case and what I've heard here today and seeing both of these men [the appellant and Marcus Owden] on the stand and knowing how brassy this man [the appellant] right over here is."
The appellant's counsel objected, and moved for a mistrial after the prosecutor had completed his closing argument, on the ground that the statement was a comment on the appellant's failure to testify. As counsel noted, the appellant had not testified at trial. However, the appellant's tape-recorded statement to Investigator Roy Freine was played for the jury. The prosecutor explained that his comment concerning the appellant was inadvertent and that he had meant to say that he was comparing the tape-recorded statement of the appellant, which was played in the courtroom, and the testimony of Marcus Owden, who had testified on the stand.
"[T]he Fifth and Fourteenth Amendments of the United States Constitution may be violated if the prosecutor comments upon the accused's silence." Ex parte Brooks, 695 So.2d 184, 188 (Ala. 1997). "`[A] statement by a prosecutor is improper if it was manifestly intended to be, or was of such a character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify.'" Ponder v. State, 688 So.2d 280, 286 (Ala.Crim.App. 1996). "[A reviewing court] must evaluate the comments made by the prosecutor in the context of the whole trial." Duren v. State, 590 So.2d 360, 361
(Ala.Crim.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied,503 U.S. 974 (1996).
Here, the prosecutor told the trial court that his comment was inadvertent. In addition, before he made the comment, the prosecutor referred to the appellant's statements to Investigator Freine approximately a dozen times. After the comment, the prosecutor again referred numerous times to the appellant's statements to Investigator Freine. The prosecutor specifically stated that the appellant's claim that he was forced to participate and had merely helped Owden with the killing "t[ook] brass." This further argument clearly indicated that the prosecutor's comment referred to the appellant's statement to the investigator, rather than to his failure to testify.
In United States v. Blackwood, 768 F.2d 131, 139 (7th Cir.), cert. denied, 474 U.S. 1020 (1985), the defendant, who did not testify at trial, objected to the following comment by the prosecutor: "What has that defendant told you about money?" The prosecutor stated that he intended to quote the appellant's comments about money from a tape-recorded conversation that had been admitted into evidence. The court held that the appellant's Fifth Amendment privilege had not been violated because a juror could not have understood the comment to refer to anything other than the appellant's tape-recorded statement. The court noted that, over 100 times before and after the comment at issue, the prosecutor had referred to what the appellant had said in the tape recordings. Cf. Ex parte Wilson, 571 So.2d 1251 (Ala. 1990) (in which the *Page 883 
prosecutor's statement that "there is only one eyewitness, and he ain't going to tell you," was not a mere reference to the defendant's statement because it was not made in the context of a discussion of the taped statement). In the present case, as in United States v. Blackwood, supra, the jury would not have taken the prosecutor's statement as a comment on the appellant's failure to testify because the context of the closing argument made such an interpretation unreasonable.
 B.
The appellant also argues that the prosecutor improperly told the jury during his initial argument in the penalty phase that, in the words of the appellant, "their decision concerning the death penalty was not final." The appellant objected at the close of the State's case, and the trial court overruled his objection. The appellant argues that the prosecutor's statements violated Caldwell v. Mississippi, 472 U.S. 320
(1985), because, he says, they led the jury to believe that the responsibility for determining the appropriateness of the death sentence lie elsewhere. The statements at issue are, in pertinent part, as follow:
 "But you will go back and weigh those matters that have been presented to you and then vote as to what you think should be the recommendation to this Court. And the Court at a later date will then hold a sentencing hearing and make its decision. But the ultimate decision does not fall on you. What falls on you is to make a recommendation. The ultimate decision[,] as the Judge told you[,] falls on him as the law provides."
"Under Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 2639,86 L.Ed.2d 231 (1985), `it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.'" Martin v. State, 548 So.2d 488,494 (Ala.Crim.App. 1988), aff'd, 548 So.2d 496 (Ala.), cert. denied,493 U.S. 970 (1989). However, "the comments of the prosecutor . . . accurately informing a jury of the extent of its sentencing authority and that its sentence verdict was `advisory' and a `recommendation' and that the trial court would make the final decision as to sentence does not violate Caldwell [v. Mississippi.]" Kuenzel v. State, 577 So.2d at 502, quoting Martin v. State, supra. See Ex parte Hays, 518 So.2d 768, 777
(Ala. 1986), cert. denied, 485 U.S. 929 (1987); Williams v. State,601 So.2d 1062, 1082 (Ala.Crim.App. 1991), aff'd, 662 So.2d 929 (Ala.), cert denied, 506 U.S. 957 (1992). "[C]omments which accurately explain the respective functions of the Judge and jury are permissible underCaldwell `as long as the significance of the [the jury's] recommendation is adequately expressed.'" Martin v. State, supra, quoting Harich v.Wainwright, 813 F.2d 1082, 1101 (11th Cir. 1987).
Here, the prosecutor correctly stated the role of the jury and the role of the judge in the sentencing procedure. His statements did not minimize the importance of the jury's role. Therefore, the comment by the prosecutor was not improper.
 III.
The appellant contends that the trial court erred by not arraigning him on the new indictment; he was arraigned on the first indictment, which was quashed. He argues that Art. 1, § 6, of the Alabama Constitution of 1901, and Rule 14.1(a), Alabama Rules of Criminal Procedure, require notice of charges and arraignment *Page 884 
before trial. He states that his current counsel did not become aware of this omission until the record of the present appeal was certified and mailed to him.
The appellant did not object at trial to the court's failure to arraign him on the second indictment. Because he did not object, this issue must be reviewed according to the "plain-error" standard of Rule 45A, Ala.R.App.P. A failure to object weighs against a finding of prejudice.Kuenzel v. State, supra.
The record reveals that the appellant was indicted on September 12, 1997, on a charge of murder committed during a rape. At that time, the appellant was represented by two attorneys. On September 8, 1998, the trial court filed an order granting a motion to quash the initial indictment and to substitute a new indictment, charging both murder committed during a rape and murder committed during a robbery. Copies of the new indictment were sent to the appellant and his attorneys on September 9. The trial court subsequently allowed these attorneys to withdraw from representing the appellant.[3] The appellant's trial began on July 26, 1999. Before beginning voir dire examination, the trial court read the new two-count indictment to the jury. After the jury was selected and sworn, the trial court asked if the defense was ready for trial and the appellant's new trial counsel, responded, "Yes."
In Watts v. State, 460 So.2d 204 (Ala. 1983), the defendant did not object to the fact that he was not arraigned on a substituted indictment until after the jury had returned its verdict. The Alabama Supreme Court held that the claim was waived. The Court stated:
 "`Due process of law . . . does not require the State to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. Rogers v. [Peck], 199 U.S. 425, 435 [26 S.Ct. 87, 89, 50 L.Ed. at 775].'
 "Alabama authority is in accord with the view that the common law formalities attendant on arraignment and plea are no longer required. See Headley v. State, 51 Ala. App. 148, 283 So.2d 458 (1973); Boyd v. State, 41 Ala. App. 507, 138 So.2d 60 (1962).
 "Overruling Crain v. United States, 162 U.S. 265 [625], 16 S.Ct. 952, 40 L.Ed 1097 (1896), and quoting from the dissenting opinion in that case the Garland Court further stated:
 "`A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, saying nothing as to such an objection, and then for the first time urge it in this court.'
 "Garland v. Washington, 232 U.S. at 646, 34 S.Ct. at 457, 58 L.Ed. at 775."
460 So.2d at 206.
Here, the appellant had notice of the charges against him because a copy of *Page 885 
the order substituting the new indictment was sent to him and his attorneys on September 9, 1998, more than 10 months before trial. The trial court also read the new indictment when the appellant's trial began. The appellant did not object to the failure to arraign him, but instead proceeded with the trial. No plain error occurred because the appellant waived his right to arraignment and plea by proceeding as if he had been duly arraigned.
 IV.
The appellant contends that the trial court erred by denying two of his challenges for cause, which, he says, forced him to use peremptory strikes to remove the two veniremembers from the jury. He argues that one veniremember stated that he had worked with the victim's mother and knew that the victim was missing and another veniremember stated that she knew the victim, that she saw her almost daily, and that she helped distribute fliers when the victim disappeared. The appellant argues that, despite their statements to the contrary, jurors who know the victim cannot render an impartial verdict.
The appellant filed a pretrial motion seeking to disqualify any veniremembers who indicated that they knew the victim or her family. He also objected at trial when the trial court refused to remove the two veniremembers. The trial court conducted a voir dire examination of the prospective jury members. One of the challenged veniremembers stated that, although he had worked with the victim's mother, he could sit on the jury and be fair and impartial. The other stated that, although she had known the victim, she would not be affected by that knowledge and could render a fair and impartial verdict.
In order to justify a challenge for cause, there must be a statutory ground or some matter that imports absolute bias or favor and leaves nothing to the discretion of the trial court. Nettles v. State,435 So.2d 146 (Ala.Crim.App.), aff'd, 435 So.2d 151 (Ala. 1983). Knowledge of the victim or the victim's family is not among the statutory grounds set out in § 12-16-150, Ala. Code 1975. Unless a prospective juror indicates that his relationship with the victim would prevent him from being fair and impartial, a challenge for cause should be denied.Dunning v. State, 659 So.2d 995 (Ala.Crim.App. 1994).
In Marshall v. State, 598 So.2d 14 (Ala.Crim.App. 1991), the defendant challenged for cause one veniremember who was employed by the victim's family and who knew the victim. The defendant also challenged a second veniremember who knew the victim's family. This court held that the challenges were properly denied because both veniremembers indicated on voir dire that they could reach a fair and impartial decision.
The relationships of the challenged veniremembers and the victim in the present case are similar to the relationships in Marshall v. State, supra. The test to be applied is whether the juror can set aside his or her opinion and try the case fairly and impartially, according to the law and the evidence. This determination should be based on the juror's answers and demeanor and is within the discretion of the trial judge.Knop v. McCain, 561 So.2d 229 (Ala. 1989). The trial court's ruling concerning a challenge for cause is entitled to great weight and will not be disturbed on appeal unless it is clearly shown to be an abuse of discretion. Nobis v. State, 401 So.2d 191 (Ala.Crim.App.), cert. denied,401 So.2d 204 (Ala. 1981). *Page 886 
Here, the trial court's denial of the appellant's challenges was not an abuse of discretion because both veniremembers stated that they would be able to set aside any knowledge they might have had and render a fair and impartial verdict, based on the evidence. Moreover, the appellant's exercise of his peremptory strikes was not impaired; he used two strikes to remove these veniremembers. In United States v. Martinez-Salazar,528 U.S. 304 (2000), the defendant used a peremptory challenge to cure the trial court's erroneous denial of a challenge for cause. The United States Supreme Court held that the defendant's right to exercise his peremptory challenges was not denied or impaired when he chose to use a peremptory challenge to remove a juror who should have been challenged for cause. See Ex parte Evans, 794 So.2d 411 (Ala. 2000) (trial court's improper granting of State's challenge for cause of veniremember was not reversible error because there was no evidence that appellant's rights probably had been injuriously affected).
 V.
The appellant contends that the trial court erred in denying his challenge to the method of execution. He argues that death by electrocution is cruel and unusual punishment and that, therefore, it is unconstitutional. He further argues that electrocution is unnecessarily painful and mutilating and carries a high risk of causing a lingering death.
The appellant filed a pretrial motion challenging the method of execution. After trial and before sentencing, he filed a renewed motion on the same issue. After sentencing the appellant, the trial court denied the motion. The trial court's denial was proper under the applicable law.
 "[The death penalty] statute has been upheld against constitutional challenges that it constitutes cruel and unusual punishment. See Tarver v. State, 553 So.2d 631
(Ala.Cr.App.), aff'd, 553 So.2d 633 (Ala. 1989), cert. denied, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990), and cases cited therein; Thompson v. State, 542 So.2d 1300 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 S.Ed.2d 913 (1976)."
Carden v. State, 612 So.2d 509, 513 (Ala.Cr.App. 1992).
 "The United States Supreme Court addressed the death by electrocution issue in In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890). In determining what constitutes cruel and unusual punishments, the Court stated: `Punishments are cruel when they involve torture or a lingering death; but the punishment of death is not cruel within the meaning of that word as used in the constitution. It implies that there is something inhuman or barbarous, — something more than the mere extinguishment of life.' Id. at 447, 10 S.Ct. at 933. In holding that such a punishment is not cruel or unusual, the Court reasoned `that this act was passed in the effort to devise a more humane method of reaching the result.' Id. Accord Spinkellink v. Wainwright, 578 F.2d 582, 616 (5th Cir. 1978). Appellant's contention is therefore without merit; death by electrocution does not amount to cruel and unusual punishment per se, but is a constitutional means of imposing a sentence of death."
Jackson v. State, 516 So.2d 726, 737 (Ala.Crim.App. 1985), remanded on other grounds, 516 So.2d 768 (Ala. 1986).
 VI.
The appellant contends that the trial court erred in admitting into evidence statements that he made while he was in police custody. Specifically, he argues that a statement he made on August 21, 1996, was coerced and was also involuntary because, he says, he was not advised of his rights. Before trial, the appellant filed a motion to suppress the statement, in which he contended that statement he made to *Page 887 
law enforcement officials was coerced and involuntary and also resulted from "unlawful activity" and misrepresentations by the State. At trial, the appellant objected to the introduction of the statement on the grounds previously set out in his motion to suppress. The appellant has not included the grounds of "unlawful activity" and misrepresentation in his appeal to this court, and no evidence to support these grounds appears in the record on appeal. Therefore, we will not address these grounds.
With regard to the grounds of coercion and involuntariness, the appellant has offered no evidence to support his claim. A separate suppression hearing was not conducted on the appellant's statements, and the appellant did not testify at trial. The only evidence concerning the voluntariness is the testimony of Investigator Roy Freine, to whom the statements were given.
Moreover, it is unclear as to which statement the appellant's argument is raised. The date of the statement the appellant specifically challenges apparently contains a typographical error. The appellant identifies the date of the statement as August 21, 1996. However, Freine testified that the appellant gave him four statements: an oral statement and a typewritten statement on April 18, 1997; a second typewritten statement on April 24, 1997; and a tape-recorded statement on August 19, 1997. There is no evidence in the record of any statement given on the date identified by the appellant.
Extrajudicial confessions are presumed to be involuntary and inadmissible. Ex parte Callahan, 471 So.2d 463 (Ala. 1985). Miranda v.Arizona, 384 U.S. 436 (1966), provides that a statement that results from custodial interrogation cannot be introduced into evidence unless warnings concerning the accused's Fifth Amendment privileges have been given. Here, Investigator Freine testified that he fully advised the appellant of his Miranda rights before he took the second, third, and fourth statements. He said that the appellant indicated that he understood those rights, and he signed written waivers of his rights on all three occasions. Freine said that he offered the appellant no promises or rewards and that he employed no threats or coercion in order to obtain any of the statements. Investigator Freine's uncontested testimony is sufficient to establish that the appellant's last three statements were voluntary and that the proper Miranda predicate was laid. Therefore, the trial court did not err in admitting these three statements into evidence.
With regard to the appellant's oral statement, Freine testified that he had previously received information from the appellant about crimes Freine was investigating. On April 18, 1997, Freine received a message that the appellant, who was incarcerated on another matter, wanted to speak with him. Freine had the appellant brought to him and asked what he wanted to talk about. The appellant said that he had some information pertaining to the death of Tiffany Harville and Freine asked, "What information?" The appellant then told Freine that "he [the appellant] was present" when she died. Freine immediately stopped the appellant and advised him of his Miranda rights before allowing him to proceed. Freine typed all of the statements the appellant made to him after the Miranda
warnings. These statements compose the typewritten statement of April 18.
Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or has otherwise been deprived of his freedom of action in any significant way. Miranda v.Arizona, 384 U.S. at 444. 86 S.Ct. 1602. A spontaneous *Page 888 
statement, made by a defendant voluntarily to an officer before any questions are asked by the officer, is admissible against the defendant even though the defendant was not given a Miranda warning.Ervin v. State, 399 So.2d 894 (Ala.Crim.App.), cert. denied,399 So.2d 899 (Ala. 1981). An unsolicited remark, not in response to any interrogation, does not fall within the scope of the Miranda
rule. Hammons v. State, 371 So.2d 986 (Ala.Crim.App. 1979).
Here, the appellant's oral statement to investigator Freine was admissible without Miranda warnings because was it not given in response to interrogation. Moreover, even if the statement should not have been admitted into evidence, any error was harmless because the substance of the statement was introduced in the form of the appellant's other admissible statements. Kelley v. State, 366 So.2d 1145 (Ala.Crim.App. 1979).
 VII.
The appellant contends that the trial court erred in admitting into evidence photographs of the victim and the crime scene. He argues that the photographs served no purpose other than to inflame the passions of the jury because, he says, the State contended that he had confessed to the crime and in his confession he had described the injuries to the victim. He further argues that proof of the cause of death and the extent of the injuries was also offered through the testimony of witnesses. The appellant contends that, in light of the confession and the witnesses' testimony, the probative value of the photographs was substantially outweighed by the danger of unfair prejudice.
The appellant did not object to the introduction of the photographs at trial. Therefore, this issue must be reviewed under the "plain-error" standard of Rule 45A, Ala.R.App.P. Plain error arises only if the failure to notice the error would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Womack, supra.
The question to be answered in determining the admissibility of a photograph of a victim is "whether it has a reasonable tendency to prove or disprove some material fact in issue. This decision is left largely to the sound discretion of the trial judge." Charles W. Gamble, McElroy'sAlabama Evidence § 207.01(2) (5th ed. 1996) (footnotes omitted). Here, the photographs were relevant because they showed the injuries suffered by the victim and the location of the crime. They also depicted information contained in the appellant's confession and in several witnesses' testimony. Photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jury. Ex parteSiebert, supra. Here, the appellant failed to show that the photographs were unduly prejudicial. The appellant's failure to object weighs against any finding of prejudice. Kuenzel v. State, supra. Therefore, the trial court did not abuse its discretion by admitting the photographs into evidence.
 VIII.
The appellant contends that the trial court erred in denying his motions for a judgment of acquittal, which were made at the close of the State's case and again at the close of all the evidence.
 A.
The appellant first argues that the testimony of accomplice Marcus Owden was uncorroborated.
Section 12-22-222, Ala. Code 1975, provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending *Page 889 
to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
In Kuenzel v. State, 577 So.2d at 518, this court stated the following with regard to corroborative evidence:
 "`The corroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense.'"
Here, the appellant's own confession corroborated the testimony of Marcus Owden. Both men stated that they picked the victim up and drove her to a dirt road, where Owden initially had sex with her. Both men stated that the sex was not consensual. Both also said that the victim's neck was cut and that her underwear was taken from the scene. In addition, both men said that the knife used in the crime was thrown into the river. Because the appellant's confession connected him with the commission of the offense, it sufficiently corroborated the testimony of the accomplice.
Moreover, the accomplice's testimony also was corroborated by evidence found at the scene of the crime. The medical examiner testified that the victim was wearing no panties, but that she had shoes and socks on her feet, which corroborated Owden's testimony. The medical examiner also testified that he found stab-like wounds on the victim's skull and hands, which corroborated Owden's testimony that he and the appellant cut the victim numerous times and stabbed her in the head. Owden's description of the scene of crime was corroborated by the testimony of Investigator Freine, who stated that the crime scene was off a dirt road.
 B.
The appellant also argues that there was insufficient evidence to convict him of the two capital offenses. Other than the element of intent, which is discussed in subpart C infra, he fails to identify any element the State failed to prove.
"The test to be applied [in reviewing a conviction based on circumstantial evidence] is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt. . ." Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App. 1978), cert. denied., 368 So.2d 877 (Ala. 1979). In reviewing the State's evidence, this court must view the evidence in the light most favorable to the State. Id.
Here, the State offered evidence that, on the pretense of taking the victim for a ride, the appellant and Marcus Owden took her from her home to an isolated location, intending to rape her if she did not have sex with them. When the victim refused to have sex, they raped her and stabbed her. The State also offered evidence that, in addition to raping the victim, the appellant and Owden robbed her of her underwear and her purse, which contained the money her mother had given her. The State's evidence was sufficient to allow the jury to exclude every reasonable hypothesis except that the appellant was guilty of the charged offenses.
 C.
The appellant argues that the prosecution failed to prove that he intentionally killed the victim. However, intent may be inferred from the use of a deadly weapon or from other attendant circumstances. Garrisonv. State, 521 So.2d 997 (Ala.Crim.App. 1986).
The appellant admitted that he raped the victim and that he then stabbed *Page 890 
her in the chest with a knife. Owden stated that the appellant cut her throat and that he, Owden, also stabbed her. The medical examiner testified that she suffered 12 stab-like wounds to the skull. Such use of a knife has been held to constitute circumstances from which intent can be inferred.
Because the evidence offered by the State was sufficient, the trial court did not err in denying the appellant's motions for a judgment of acquittal.
 IX.
This court is required to review the propriety of the appellant's sentence of death and to examine the record for plain error. Section13A-5-53(a), Ala. Code 1975; Rule 45A, Ala.R.App.P. The trial court found three aggravating circumstances: that the appellant had previously been convicted of a capital offense or violent felony, that the present capital offense was committed while the appellant was engaged in committing a rape in the first degree, and that the present capital offense was committed while the appellant was engaged in committing a robbery in the first degree. The court found one statutory mitigating circumstance, the appellant's age at the time of the offense. He also found the existence of three non-statutory mitigating factors: the appellant's family life, his good behavior since his incarceration, and witnesses' testimony in favor of a sentence of life imprisonment without parole. The findings of the trial court are supported by the record.
There is no evidence that the appellant's sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances indicates that death is the appropriate sentence in this case. The sentence is not disproportionate to the penalty imposed in similar cases, considering both the crime and the appellant.
The appellant killed the victim during a rape and a robbery. Similar crimes have been punished capitally throughout the state. The following cases deal with murders committed during a rape: Brooks v. State,695 So.2d 176 (Ala.Crim.App. 1996), aff'd, 695 So.2d 184 (Ala.), cert. denied, 522 U.S. 893 (1997); Bradley v. State, 494 So.2d 750
(Ala.Crim.App. 1985), aff'd, 494 So.2d 772 (Ala. 1986), cert. denied,Williams v. Ohio, 480 U.S. 923 (1987); Dunkins v. State, 437 So.2d 1349
(Ala.Crim.App.), aff'd, 437 So.2d 1356 (Ala. 1983), cert. denied,465 U.S. 1051 (1984). The following cases deal with murders committed during the course of a robbery: Clemons v. State, 720 So.2d 961
(Ala.Crim.App. 1996), aff'd, 720 So.2d 985 (Ala. 1998), cert. denied,525 U.S. 1124 (1999); Williams v. State, 710 So.2d 1276 (Ala.Crim.App. 1996), aff'd, 710 So.2d 1350 (Ala. 1997), cert. denied, 524 U.S. 929
(1998); Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App. 1990), aff'd,577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886 (1991); Brownlee v.State, 545 So.2d 151 (Ala.Crim.App. 1988), aff'd, 545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874 (1989); Hallford v. State, 548 So.2d 526
(Ala.Crim.App. 1988), aff'd, 548 So.2d 547 (Ala.), cert. denied,493 U.S. 945 (1989).; Davis v. State, 536 So.2d 110 (Ala.Crim.App. 1987), aff'd, 536 So.2d 118 (Ala. 1988), cert. denied, 490 U.S. 1028
(1989).
We have thoroughly reviewed the record in this case, and we have found no error that adversely affected the appellant's rights during either the guilt phase or the *Page 891 
sentencing phase of this trial. The appellant's convictions and his sentence of death are proper. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
Long, P.J., and Cobb, Baschab, and Fry, JJ., concur.
[1] The July 15, 1995, date is an apparent typographical error. The victim's mother and other witnesses testified that they saw the victim for the last time on July 29, 1995.
[2] The appellant does not include a claim of unconstitutionality in his brief to this court. Because there is no evidence in the record of any constitutional defect, this claim is not addressed.
[3] The court signed the order permitting counsel to withdraw on August 31. The order was filed on October 9 and sent to the appellant and the attorneys on October 15. The court signed an order on October 1 appointing present appellate counsel as new trial counsel for the appellant. The order was filed and sent to the appellant and his attorney on October 5.