[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15673
_____

D.C. Docket No. 2:11-cv-00543-WS-N


DOMINEQUE RAY,

Petitioner - Appellant,

versus

ALABAMA DEPARTMENT OF CORRECTIONS,
COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF ALABAMA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(January 6, 2016)

Before MARCUS, WILSON, and MARTIN, Circuit Judges.

WILSON, Circuit Judge:

Alabama death row inmate Domineque Ray appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Ray was convicted of capital murder in the course of first-degree rape and first-degree robbery. The appeal before us concerns whether Ray's counsel was ineffective during the penalty phase of his trial by not investigating and presenting readily available mitigating evidence regarding his traumatizing childhood, mental deficiencies, and steroid abuse.

I

In September 2007, Ray was indicted and charged with capital murder in the death of fifteen-year-old Tiffany Harville, whose remains were found in Selma, Alabama. The trial court made the following findings of fact concerning the offense:

> On or about August 16, 1995, Lawrence Milton was operating a tractor and bushhog just off County Road 62 in Dallas County, Alabama. As Mr. Milton went about his duties bushhogging the field, he discovered the skeletal remains of Tiffany Harville, who had been missing since on or about July 15, 1995.
>
> Tiffany Harville was 15 years of age at the time of her death. Mary Coleman, Tiffany's mother, described the last time she [had] communicated with her daughter, Tiffany, in July 1995. Mrs. Coleman stated that she, Mrs. Coleman, was leaving town for the evening to attend a Union Workshop. She left Tiffany approximately $6 spending money. Upon Mrs. Coleman's return to Selma on Sunday afternoon, she discovered that her daughter had not been seen since 8:00 p.m. Saturday night. Mrs. Coleman described the efforts made to locate Tiffany, and further reported that the Defendant, Dominique Ray, came to her house to offer his assistance and share

2

Mrs. Coleman's concern for her missing daughter. She testified that the Defendant offered to distribute fliers, and at one time, offered reward money to locate Tiffany. On two other occasions before Tiffany's body was discovered, the Defendant called Mrs. Coleman on the phone to make a general inquiry as to Mrs. Coleman's condition.

The investigation into the death of Tiffany Harville continued for several months. There were numerous leads and suspects, and at one time an individual was arrested and held without bond for the murder of Tiffany Harville. Finally, the codefendant in this case, Marcus D. Owden, came forward and gave the police a full accounting of the events and circumstances surrounding the death of Tiffany Harville. Owden testified at [t]rial against the Defendant Ray that it was their intent to form a mob or a gang, and that they had intended to find Tiffany Harville for the purpose of having sex with her. Owden stated that he did not know Tiffany, but that Ray did and that it was Ray's idea to go and get Tiffany. Owden testified that they had talked about having sex with her before they went to her house to get her. On the evening of July 15, 1995,[1] Owden and Ray picked Tiffany up and proceeded to take her to [the] Sardis community located in Dallas County, Alabama, on or near Highway 41. Owden stated that they had decided they were going to ask her for sex first, and if that didn't work, that they would take it. He described during his testimony how he and the Defendant Ray [had] had sex with her and how she [had] pleaded for help.

Owden testified that Ray cut her throat and that he, Owden, cut her as well. He then described that they took part of her clothing along with her purse, which contained $6 or $7.

In addition to the testimony of Marcus D. Owden, the State offered into evidence the statement of the Defendant, Dominique Ray. In his statement, he admits to his role in the rape and murder of Tiffany Harville, yet attempts to establish Owden as the primary perpetrator.

---

[1] The July 15, 1995, date is an apparent typographical error. The victim's mother and other witnesses testified that they saw the victim for the last time on July 29, 1995.

3

Dr. Lauridson, the State Medical Examiner with the Alabama Department of Forensic Sciences, described 12 defects in the skull which were consistent with stab-like defects. He [wa]s unable to testify with regard to soft tissue wounds, due to the decomposition of the body.

*Ray v. State*, 809 So. 2d 875, 879–80 (Ala. Crim. App. 2001) (internal quotation marks omitted) (alterations and footnote in the original).

Initially, Alston Keith and George Jones were appointed to represent Ray. The parties jointly requested that Ray receive a mental health examination, which the trial court allowed. Dr. Ronan, a staff psychologist with the State of Alabama's Department of Mental Health and Mental Retardation, performed a mental health examination of Ray and reported Ray was competent to stand trial. Ray declined a favorable plea offer and reportedly told counsel he knew witnesses of help to his case, but he refused to provide counsel with their names or anticipated testimony. Upon Keith and Jones's request, the court relieved them of the representation and appointed William Whatley and Juliana Taylor to represent Ray.[2]

After a two-day trial, the jury returned a unanimous guilty verdict, convicting Ray of both Count 1 (murder during the commission of rape, first degree) and Count 2 (murder during the commission of robbery, first degree). In preparation for the penalty phase, Ray and his mother, Gladys, provided defense

---

[2] Taylor was added as counsel by motion from the defense. Whatley and Taylor represented Ray in the Harville murder case at the same time that they were serving as Ray's counsel in a separate, unrelated charge of double homicide. Ray was charged with and convicted of murdering two young boys, Earnest and Reinhard Mabin, a few months before the Harville murder trial began. He received a life sentence without parole for his role in the Mabin murders.

counsel with a list of people to contact, but counsel's efforts proved largely unsuccessful. Some potential witnesses refused to answer their doors, while at least one other answered and stated: "I'm not coming [to court]. And if I come, you don't want to hear what I have got to say [about Ray]." Ray told counsel that his brother, Europe, was "not available and not around and not in the picture," and forbade them from contacting the mother of his child. Whatley and Taylor made no attempt to contact either Europe or the mother of Ray's child. During the penalty phase before the jury, Whatley and Taylor presented only Gladys as a witness. The court also conducted a separate sentencing hearing, at which defense counsel presented eight witnesses to speak to Ray's nonviolent nature; seven of these witnesses recommended Ray receive a life sentence without parole rather than the death penalty.

The court entered an order sentencing Ray to death. The Sentencing Order stated that the Government proved beyond a reasonable doubt the following aggravating factors: Ray had been previously convicted of another capital offense (murder of the Mabin brothers); Ray committed the Harville murder in the course of or while attempting to commit first degree rape; and Ray committed the Harville murder in the course of or while attempting to commit first degree robbery. Further, the sole statutory mitigating factor was Ray's age at the time of the offense (nineteen years old) and the only non-statutory mitigating factors were

evidence of Ray's "unfortunate family life"; character evidence reflecting his helpfulness to others and easygoing behavior; that he had a child; good behavior during incarceration; and testimony from witnesses that he deserved life without parole. After weighing the aggravating factors and mitigating circumstances, the court concluded that the facts warranted the death penalty.

Ray directly appealed his conviction and sentence, but the Alabama Court of Criminal Appeals affirmed and both the Alabama Supreme Court and the United States Supreme Court denied a writ of certiorari. Ray then filed a Rule 32 petition to collaterally attack his conviction. New counsel represented Ray in these state post-conviction proceedings, and argued, *inter alia*, that Ray received ineffective assistance of counsel at the penalty phase of his trial. The state trial court held an extensive post-conviction evidentiary hearing at which it received testimony from Ray's family members, including Europe; Whatley and Taylor, Ray's trial counsel; multiple mental health professionals; and a social worker. These witnesses presented disturbing testimony concerning Ray's childhood and mental health. In particular, Europe testified to the physical and sexual abuse he and his brother suffered as children; their abandonment in Chicago; Ray's depression, alcoholism, and suicide attempts; and the violence they witnessed against their mother. Whatley and Taylor explained that they never requested public health or school records, and, separately, that they declined to pursue a mental health or steroid

6

abuse defense based only on their own observations of Ray and Dr. Ronan's report, rather than arranging for additional testing or evaluation. *See Ray v. State*, 80 So. 3d 969, 989, 997 (Ala. Crim. App. 2011). After considering this additional evidence, the state trial court wrote a 107-page order denying Ray's petition in its entirety. Specifically, the court explained: "[G]iven the brutal nature of the facts surrounding Tiffany Harville's murder, the Court finds that there is no reasonable probability that more details about Ray's home life would have caused a different result in the jury's recommendation at the penalty phase of trial. This Court can affirmatively state that if the evidence presented by Ray at his evidentiary hearing had been presented during the penalty phase of trial it would not have changed this Court's determination that the aggravating circumstances outweighed the mitigating circumstances."[3] *Id.* at 985 (citation omitted) (quoting the state trial court). Citing this particular portion of the order, the Alabama Court of Criminal Appeals affirmed. *See id.* The Alabama Supreme Court once more denied a writ of certiorari.

Ray filed a timely petition for a writ of habeas corpus in the United States District Court for the Southern District of Alabama, seeking relief under 28 U.S.C. § 2254. After evaluating Ray's claims for relief, the district court denied the

---

[3] The same judge oversaw Ray's initial sentencing and postconviction trial. Of course, the prejudice inquiry under *Strickland v. Washington* is an objective, not subjective, standard. *Strickland* itself indicated that the views of the actual sentencing judge are irrelevant to the prejudice inquiry. *See* 466 U.S. 668, 700, 104 S. Ct. 2052, 2069, 2071 (1984) (noting "that testimony [from the sentencing judge] is irrelevant to the prejudice inquiry").

petition in full, as well as Ray's request for a certificate of appealability. Ray

appealed to this court for a certificate of appealability, which we granted on a

single issue: whether Ray suffered from ineffective assistance of counsel in the

preparation and presentation of mitigation evidence during the penalty phase of his

trial.

## II

We review de novo the grant or denial of a writ of habeas corpus by a

district court. *Muhammad v. Sec'y, Fla. Dep't of Corr.*, 733 F.3d 1065, 1071 (11th

Cir. 2013). However, because Ray filed his petition after April 24, 1996, this case

is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA). *See Abdul-Kabir v. Quarterman*, 550 U.S.

233, 246, 127 S. Ct. 1654, 1664 (2007). AEDPA "establishes a more deferential

standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206,

1215 (11th Cir. 2001), "in order to prevent federal habeas 'retrials' and to ensure

that state-court convictions are given effect to the extent possible under law," *Bell

v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849 (2002); *see also Woodford v.

Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam) (recognizing

that the federal habeas court's evaluation of state court rulings is highly deferential

and state court decisions must be given the benefit of the doubt).

Section 2254(d) permits the federal courts to grant a writ of habeas corpus only where the state court's determination resulted in a decision that was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). "A state court decision is 'contrary to' clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States Supreme Court, or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts." *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1316 (11th Cir. 2013). "A state court decision involves an 'unreasonable application' of clearly established federal law if the state court correctly identifies the governing legal principle from the relevant Supreme Court decisions but unreasonably applies it to the facts of the particular case." *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013). (internal quotation marks omitted).

III

To succeed on a claim of ineffective assistance of counsel, the petitioner must show both that his lawyer's performance was deficient and that the deficient performance prejudiced his defense. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064 (1984). If a

petitioner's claim may be resolved on the prejudice prong alone, then our precedents instruct that we do so. *See, e.g.*, *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1017 (11th Cir. 2015); *Velazco v. Dep't of Corr.*, 774 F.3d 684, 687 (11th Cir. 2014). To succeed on the prejudice prong of a *Strickland* claim, petitioner must show that the deficiency in counsel's performance deprived him of a fair trial, such that there has been "a breakdown in the adversarial process that our system counts on to produce just results." *Brownlee v. Haley*, 306 F.3d 1043, 1069 (11th Cir. 2002) (internal quotation marks omitted). Such a showing is made where a petitioner demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the petitioner's sentencing. *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct. 1495, 1512 (2000) (internal quotation marks omitted).

To assess the reasonable probability of a different sentence, "we consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." *Porter v. McCollum*, 558 U.S. 30, 41, 130 S. Ct. 447, 453–54 (2009) (per curiam) (internal quotation marks omitted and alterations adopted). In a death penalty case, if there is a "reasonable probability that, absent [counsel's] errors, the

10

sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death," then the prejudice prong of *Strickland* is met. *Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) (internal quotation marks omitted).

IV

We direct our AEDPA analysis to the Alabama Court of Criminal Appeals' decision, *Ray*, 80 So. 3d at 975–85, because it is the last reasoned decision by the state courts to consider Ray's penalty phase ineffective assistance of counsel claim.[4] *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1261 n.12 (11th Cir. 2009); *see also Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1250 (11th Cir. 2013).

Since the Alabama Court of Appeals adjudicated Ray's penalty phase ineffective assistance claim on the merits in a reasoned opinion, we follow a two-step process in applying § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011). First, we "determine what arguments or theories support . . . the state court's decision;" second, we "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.*; *see also Sochor v. Sec'y Dep't of Corr.,* 685 F.3d 1016, 1027 (11th Cir. 2012) (applying *Richter*'s two-step

---

[4] As noted, the Alabama Supreme Court denied Ray's petition for a writ of certiorari from the Alabama Court of Criminal Appeals decision affirming the denial of state postconviction relief. *Ex parte Ray*, 80 So. 3d 997 (Ala. 2011).

analysis to determine whether the state court unreasonably applied federal law).

Our careful review of the state court record and the Alabama Court of Criminal

Appeals' opinion leads us to conclude that Ray has failed to show, as is required

under Supreme Court precedent, that the state court's ruling rejecting his penalty

phase ineffective assistance of counsel claim "was so lacking in justification that

there was an error . . . beyond any possibility for fairminded disagreement."

*Richter*, 562 U.S. at 103, 131 S. Ct. at 786–87.

In Ray's case, the Alabama Court of Criminal Appeals correctly identified

*Strickland's* prejudice standard when it adjudicated his ineffective assistance of

counsel claim. *Ray*, 80 So. 3d at 975. Further, in assessing *Strickland* prejudice in

the capital sentencing context, the Court correctly noted that courts must "reweigh

the evidence in aggravation against the totality of available mitigating evidence."

*Id.* at 977 (internal quotation marks omitted). After reweighing the aggravating

evidence against the totality of mitigating evidence, old and new, the Alabama

Court of Criminal Appeals held "that the mitigating evidence presented at the

postconviction hearing—but omitted from the penalty phase of Ray's capital-

murder trial—would have had no impact on the sentence in this case." *Id.*

Ray argues that his trial counsel's deficient performance prejudiced the

outcome of his case because the presentation of psychological and family-history

evidence would have increased the likelihood that jurors would have recommended

life imprisonment instead of a death sentence.  Even assuming counsel performed

deficiently, Ray has not shown "that the evidence on the prejudice question is so

one-sided in his favor that the answer is, as the Supreme Court has phrased it,

'beyond any possibility for fairminded disagreement.'"  *Holsey v. Warden, Ga.*

*Diag. Prison*, 694 F.3d 1230, 1258 (11th Cir. 2012) (quoting *Richter*, 562 U.S. at

103, 131 S. Ct. at 787).[5]

The particular aggravating factors here make Ray's case one of the worst to

come before us.  These factors are critical, because we are required "to consider *all*

the relevant evidence that the jury would have had before it . . . not just the

---

[5] The Alabama Court of Criminal Appeals did not render a decision contrary to or resulting in an unreasonable application of clearly established federal law when it rejected Ray's claim that trial counsel was ineffective for failing to investigate and present evidence of steroid abuse. The Alabama Court of Criminal Appeals recognized that failure to present evidence of steroid abuse may support a penalty phase ineffective assistance of counsel claim. *See Ray*, 80 So. 3d at 996–97 (citing *Sallahdin v. Gibson*, 275 F.3d 1211, 1239 (10th Cir. 2002) (holding trial counsel's failure to present evidence of steroid abuse was prejudicial as to sentencing)). However, the Alabama Court of Criminal Appeals found Ray's case factually distinguishable from *Sallahdin*—which involved undisputed use of steroids at the time of the murder—because there was "little credible evidence suggest[ing] that Ray was using steroids at the time of the murder"; Ray told Dr. Ronan that he "could not remember whether he was taking steroids at the time of the murder"; Ray told Dr. King "that he had only used steroids for a brief period of time when he was 16 years old"; and "there was no medical evidence or evidence from Ray's family members indicating any alterations in Ray's personality around the time of the murder." *Id.* Further, the Alabama Court of Criminal Appeals held that "counsel had no reason to believe that steroid use was an issue in this case," given that there was no evidence presented during the state evidentiary hearing that "Ray had been abusing steroids at the time of the murder, that the murder was a result of a steroid-induced episode, or that Ray's personality was altered at the time of the murder." Given these particular facts, Ray has not shown that the Alabama Court of Criminal Appeals' rejection of his steroid-based ineffective assistance of  counsel claim was so unjustified that it "was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Richter*, 562 U.S. at 103, 131 S. Ct. at 786–87; *accord Bobby v. Dixon*, 565 U.S. ___, ___, 132 S. Ct. 26, 27 (2011).  Accordingly, we need not further discuss this element of the appeal.

mitigation evidence [counsel] could have presented." *Wong v. Belmontes*, 558 U.S. 15, 20, 130 S. Ct. 383, 386 (2009) (per curiam). The especially gruesome nature of the Harville murder, Ray's active efforts to thwart the police investigation, and Ray's prior double homicide conviction convince us that fairminded jurists could agree with the Alabama Court of Criminal Appeals that, after reweighing the aggravating factors against the totality of evidence in mitigation, there is no "reasonable probability" that at least two jurors would have changed their recommendation and the sentencing judge would have ruled differently.[6]

In this instance, we cannot say the petitioner has undermined our confidence in the outcome of the trial enough to overcome the deference AEDPA requires. *See Williams*, 529 U.S. at 391, 120 S. Ct. at 1512. We find ourselves in a situation that warrants deference to the state court's determination. Though the extent of mitigating evidence presented during the post-conviction proceedings was both profound and compelling, so too was the heinous nature of the offense and prior convictions of murdering Ernest and Reinhard Mabins, who were 18 and 13 years old, respectively, when they were shot to death in their home. The jury would have learned not only about Ray's traumatic childhood, but also that Tiffany Harville was killed by blunt force trauma to her head, with repeated stab-like

---

[6] For the jury to recommend the death sentence, at least ten jurors must concur in that sentence. Ala. Code § 13A-5-46(f).

punctures of her brain, while being raped and robbed. Though the members of the jury would have heard that Ray was abandoned in a rat-infested building in Chicago when he was a child, they also would have heard that after killing Tiffany, Ray audaciously went to Tiffany's house, spoke with her mother on multiple occasions, and pretended to assist in locating Tiffany. Lastly, the jury would have had to consider that Ray suffered from suicidal thoughts, but also that he previously was convicted of murdering two other young people.

Although we are troubled by the paucity of counsel's mitigation investigation, our confidence in the outcome of the sentencing is not undermined. We hold that the Alabama Court of Criminal Appeals did not render a decision contrary to or resulting in an unreasonable application of clearly established federal law when it determined that Ray failed to establish prejudice under *Strickland*. Therefore, we affirm.

**AFFIRMED.**